**1111 19TH STREET ASSOCIATES, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 85–56.**

District of Columbia Court of Appeals.

Argued March 10, 1986.
Decided Feb. 18, 1987.

Gilbert Hahn, Jr., Washington, D.C., for appellant.

Richard L. Aguglia, Asst. Corp. Counsel, with whom John H. Suda, Acting Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, James R. Murphy, Deputy Corp. Counsel, and Lutz Alexander Prager, Asst. Deputy Corp. Counsel, Washington, D.C., were on brief, for appellee.

Before PRYOR, Chief Judge, BELSON, Associate Judge, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge:

In this appeal we are asked to decide whether the trial court properly held that improvements to realty constituted "omitted" property within the meaning of D.C. Code § 47–831 (1985 Supp.)[1] and are therefore subject to retroactive assessment and taxation. This dispute concerns District of Columbia real property taxes of $137,561.10 for the 1980 tax year and $320,226.32 for 1981. The taxpayer, appellant 1111 19th Street Associates, principally contends that the improvements in question cannot be characterized as "omitted" property under the statute because the District government had assessed the property in its entirety for these tax years while having knowledge of the construction and completion of the subject improvements. The District government counters that the value ascribed to the taxpayer's property for purposes of assessment was specifically allocated solely to the land, and that § 47–831 could therefore be used to remedy the District's inadvertent failure to value and tax the improvements. We agree with the government, and affirm the judgment of the trial court.

## I.

The pertinent facts in this case are for the most part not in dispute.[2] The taxpayer, a District of Columbia limited partnership, is the owner of the property, which is located at 1111 19th Street, N.W., and is therefore obligated to pay all real estate taxes assessed against the property by the District government.

On or about March 1, 1979, the taxpayer received a notice of annual assessment pursuant to D.C.Code § 47–824 (1981) (formerly *id.* § 47–645 (Supp. V 1978)) for the 1980 tax year, reflecting a property valuation of $4,715,100 as of January 1, 1979. The assessment notice, which was sent by the Department of Finance and Revenue (the "Department"), ascribed the entire $4,715,100 value to the land, and no value to improvements as evidenced by blank spaces on the notice corresponding to the "building" category. The Department's assessment record card for the property also indicated, in the same manner, that the entire assessed value was attributed to the land, with no value having been assigned to improvements.[3] Yet, as of and prior to the 1980 tax year valuation date of January 1,

---

**1.** Section 47–831's predecessor, *id.* § 47–712, (1973), was extant when this dispute arose. The new statute, which we refer to herein, is essentially a recodification of § 47–712 (1973).

**2.** Pursuant to Super.Ct.Tax R. 11(b), the parties entered into a stipulation of evidence prior to trial which the trial court primarily relied upon for evidence in reaching its decision. The trial court's opinion in this matter, which includes a factual recitation we have elaborated upon here, is reported in *1111 19th Street Assoc. v. District of Columbia,* 112 Daily Wash.L.Rptr. 1317 (July 3, 1984).

**3.** An examination of this assessment record card, as well as the notice of property assessment for the 1980 tax year, reveals that the 1979 tax year assessment for the property amounted to $3,588,715, all of which was attributed to land. An earlier assessment record card containing tax year 1978 entries indicates that the property was assessed a valuation of $1,444,130 for 1978. This assessment was also attributed solely to land.

1979, the Department's assessment record file included notations that building plans were submitted February 7, 1977, the property was inspected December 17, 1977, and construction was in progress on June 20 and November 20, 1978. According to Mr. Robert L. Klugel (the only witness at trial), who was Acting Supervisor of the Department's Standards and Review Unit when this dispute arose, these notations were made in the file on the basis of on-site observations by Department employees. In any event, no appeal of the assessment was filed,[4] and the taxpayer timely paid 1980 taxes in the amount of $86,286.34.

On or about March 1, 1980, the taxpayer received a notice of annual assessment for tax year 1981 reflecting a valuation of $5,762,900 as of January 1, 1980. No appeal of this assessment was filed, and the taxpayer timely paid taxes in the amount of $122,749.78. The notice of property assessment was identical in form to the notice for the previous tax year, and like the previous notice, attributed the entire assessed value only to land. The same assessment record card contained tax year 1981 entries and, as with tax year 1980, did not show any value whatsoever assigned to improvements. However, sometime between January 1, 1979 and January 1, 1980, the valuation dates for tax years 1980 and 1981, the notation "6–15–79 50% complete" was made in the assessment record file. Klugel testified that this report was also made on the basis of an on-site observation of the property.

In April 1980, the taxpayer's management agent for the property, Charles E. Smith Management, Inc., submitted "income-expense" forms for calendar year 1979 to the assessment division of the Department for several of the properties it handled.[5] In an accompanying letter of transmittal, the agent notified the Department that "no form was received for the property at 1111 19th Street, N.W. [the taxpayer's property], which we opened in mid–1979. If an income-expense form is required for this building, please forward us one and we will complete it." In April of the following year, the taxpayer's agent filed a calendar year 1980 income-expense form with the Department for the premises at 1111 19th Street, N.W.

The taxpayer received a notice of annual assessment for tax year 1982 on or about March 1, 1981, and it reflected a property valuation of $5,762,900 as of January 1, 1981. Despite having filed no appeal from this assessment, the taxpayer never received the tax bill of $122,749.78. The assessment notice and record card entries for this tax year, like those for the prior years, ascribed the property's assessed value entirely to the land alone. However, sometime between January 1, 1980 and January 1, 1981, the valuation dates for the 1981 and 1982 tax years, the notation "100% complete ... 5/29/80"—a notation also reflecting someone's personal observation according to Klugel—was made in the assessment record file.[6]

On September 11, 1981, the taxpayer received a "Notice of Property Assessment for Tax Year 1982" which reflected an increase in the property's 1982 assessment

---

4. See D.C.Code § 47–825(i) (1981) (formerly *id.* § 47–646 (1973)).

5. *See* D.C.Code § 47–821(d) (1981 & Supp.1985) (formerly *id.* § 47–642 (Supp. V 1978)).

6. The "assessment record file," which the parties ambiguously referred to in their stipulation of evidence and which we have referred to herein, contains among other documents the property's assessment record card (which we have also referred to in this opinion) and "Construction Permit Card," each of which was introduced into evidence at trial. With the exception of the one notation mentioned above that building

plans were submitted February 7, 1977, the notations we have referred to as having been made periodically in the assessment record file were, perhaps more accurately, made on the Department's construction permit card for the property. In addition to these notations on the construction permit document, there are other cryptic notations, including "Stories: 100% Completed 6/24/81, Imps Never Got in System" and "S.N.Y." The last notation appears on the document before some of the other entries we have referred to in text, *e.g.,* "S.N.Y. Inspected 12–17–77." Robert Klugel testified at trial that "S.N.Y." in this context means "See Next Year."

from $5,762,900 to $20,876,800.[7] The difference, $15,113,900, was attributed solely to the office building improvements on the land as established by the inclusion of that sum on the assessment notice in spaces corresponding to the "building" category. The notice indicated that "Permit Work" was the reason for the adjusted assessment. The notice also informed the taxpayer that an appeal of the assessment to the Board of Equalization and Review could be filed "between September 1 and September 30," a right provided by D.C. Code § 47–829(a) (1985 Supp.) (formerly *id.* § 47–710 (1973)) which authorizes, among other things, supplemental assessments based upon "new structures erected or roofed" since the previous assessment valuation.[8]

Soon after the taxpayer received notice of the supplemental assessment, its counsel conferred with Robert Klugel on the legality of assessment under § 47–829(a). Because no new construction had occurred on the property since tax year 1982's valuation date, January 1, 1981, counsel asserted that the supplemental assessment under § 47–829(a) was untimely. They discussed the possibility of restoring the assessed value to the original tax year 1982 figure ($5,762,900) contained in the notice of assessment that the taxpayer had received in March.

On September 16, 1981, Klugel wrote to Corporation Counsel Richard L. Aguglia, Chief of the Taxation Section, to express his opinion that the supplemental assessment increase under § 47–829 was improper. Klugel requested Corporation Counsel's "endorsement" of this opinion, as well as its advice on whether the improvements could nevertheless be assessed as "omitted" property under § 47–831.[9] The government responded by a memorandum to Klugel dated September 22, stating that the § 47–829 supplemental assessment notice was invalid "and should have been made in 1980 for September 15, 1980 billing purposes." Aguglia maintained, however, that the improvements could be assessed as omitted property because the improvements had altogether escaped taxation. The two subsequently conferred and a determination was made to withdraw the supplemental assessment and to impose an omitted property assessment to account for the value of the improvements.[10]

On November 9, 1981, the taxpayer received by mail a letter dated October 19, 1981, from Robert L. King, Acting Associate Director of the Department, which notified the taxpayer that the notice of supplemental assessment for tax year 1982 issued pursuant to § 47–829 was being withdrawn, and further that an omitted property assessment was being levied.[11] The taxpayer was specifically informed:

[T]he use of [§ 47–829] ... for permit work was untimely. Please consider that notice void. However, in reviewing the files, we have concluded that the improvements to the property have *never* been assessed since construction began in 1977. Therefore, pursuant to [§ 47–831, the omitted property statute,] we have assessed the improvements to the subject property for tax years 1980, 1981 and 1982. [Emphasis in original.]

Tax bills were enclosed, indicating that payment would be required within 30

7. This notice was dated September 8, 1981. As the trial court noted in its opinion, about a week earlier the taxpayer's management agent was notified by the agent for the lender-mortgagee that the annual tax listed in the tax billings for the first half of the 1982 tax year was $444,-675.84.

8. The parties stipulated prior to trial that the taxpayer did not exercise its rights to appeal in reliance on a promise from the Department that no appeal was necessary. *See supra* note 2.

9. In his memorandum, Klugel advised Aguglia that the improvements would be included in the

tax year 1983 assessment whether or not assessable retroactively as omitted property.

10. There is no dispute that the property was improperly assessed under § 47–829. Since this issue is not now before us, we do not consider it.

11. A copy of King's letter was received by the taxpayer's counsel on November 12. The delay in receipt of the October 19 letter by the taxpayer and its counsel is unexplained.

days.[12] Subsequently, extensions were obtained from the Department. The taxpayer paid the disputed taxes—$137,561.10 for tax year 1980 and $320,226.32 for 1981—on December 31, 1981, as permitted by the Department.[13]

After receipt of the Department's October 19 letter, the taxpayer, through counsel, filed an administrative appeal from the § 47–829 supplemental assessment which had already been withdrawn. A hearing on the appeal was held before the Board of Equalization and Review on November 19, 1981, at which the District argued that the Board was without jurisdiction to hear the appeal because the assessment had been withdrawn. By a letter dated December 7, 1981, the Board informed the taxpayer that it would take no action on the appeal for the reason advanced by the District at the November 19 hearing.

In January 1982, the taxpayer instituted this litigation by filing in the Tax Division of the Superior Court a petition for refund of real estate taxes in the amount of $137,-561.10 for tax year 1980 and $320,226.32 for 1981 which had been paid pursuant to the District's omitted property assessment.[14] In alleging that the assessment and related tax billings constituted "illegal, invalid exactions," the taxpayer in its refund petition made several contentions, each of which is now advanced in one form or another on this appeal. The gravamen

of its petition, though, was that because the existence of the subject improvements was known to the District in 1977, as well as on each valuation date for annual assessment for tax years 1980 through 1982, the improvements were not "omitted" from assessment within the context of § 47–831. The taxpayer contended, therefore, that those original valuations ascribed to the property constituted final and fully-informed assessments.

In February 1982, the District answered the taxpayer's petition, denying its material allegations, and then moved for summary judgment on the theory that, as a matter of law, it properly availed itself of § 47–831 to retroactively assess the property since no value was attributed to improvements for the tax years in question, even though *id.* § 47–821(a) requires that an assessment be made for all real property, "identifying *separately* the value of land and improvements thereon." *1111 19th Street Associates v. District of Columbia, supra,* 112 Daily Wash.L.Rptr. at 1321 (emphasis supplied). The trial court issued a comprehensive opinion and order upholding the omitted property assessment under § 47–831 for tax years 1980 and 1981.

In its opinion and order, the trial court viewed the central issue of this case to be "whether the valuation of land but not improvements constituted [final] assess-

---

**12.** The tax bills received with the October 19 letter contained the following language (but not in this form):

(a) "Payer's Receipt;" "Fiscal Year 1980;" "Total Assessed Value 12232100;" "Total Tax 137561.10;"

(b) "1981 SECOND HALF TAX BILL CLASS III;" "IMPS ADDED;" "ADMIN. ERROR;" "TOTAL ASSESSMENT AT MARKET VALUE 20797000;" "Payment Due by Mar 31 81;" "FULL YEAR 320226.32;"

(c) "1982 FIRST HALF TAX BILL CLASS III;" "IMPS ADDED;" "ADMIN. ERROR;" "TOTAL ASSESSMENT AT MARKET VALUE 20797000;" "FIRST HALF 221488.05;" "SEP 15 81 FULL YEAR 44297610."

The trial court pointed out in its opinion that on or about July 15, 1982, the assessment record card for the property was changed by the addition of a notation that an omitted property assessment had been made for the second half of tax year 1980, as well as for tax years 1981 and 1982. The trial court noted further that in

trial testimony, Klugel stated that the notation as to tax year 1980 should have been for the full year. We add that this notation was made pursuant to Robert King's October 19 letter, and expressly reflected that improvements had been placed on the assessment roll.

**13.** As we have stated, this dispute involves the omitted property assessments for the 1980 and 1981 tax years. While the taxpayer was notified that such an assessment was being levied also for 1982 [see notice quoted in part in text, *supra*], it seems the taxpayer successfully challenged the 1982 assessment (on grounds unknown to us) in a separate but related case before the Tax Division.

**14.** The taxpayer notes in its brief that it filed in the Tax Division a separate petition challenging the actual valuation amounts of the assessments for the 1980 and 1981 tax years. Action on this petition is being held in abeyance pending the final disposition of the instant appeal.

ment of the subject property in light of the omitted property statute." *Id.* The significant facts in this regard, the court observed, "are that the District's record did contain clear evidence of the construction and existence of improvements yet only the land was assigned a value for the tax years in issue." *Id.* With this apparent contradiction in mind, the trial court reviewed the statutory scheme for assessments in the District and underlying policy considerations, and then examined pertinent decisional law in this jurisdiction and elsewhere. *Id.* at 1321–22. The court concluded that in determining whether property was "omitted" from assessment within the meaning of § 47–831 the dispositive consideration is whether the property truly escaped assessment (and therefore taxation), such as where improvements were not valued due to clerical error or oversight, rather than simply having been reassessed on the basis of a new judgment as to valuation. *Id.* at 1322.

The trial court concluded there was no previous exercise of judgment on the value of the improvements, stating:

> What is important is that in valuing the subject property for the years in question, the assessor did not make any use of information relating to construction in the Department's own records. The assessment record contains notations that a building was under construction on June 20, 1978, and November 20, 1978, was 50 percent complete by June 15, 1979, and was 100 percent complete by May 29, 1980. Yet no value whatsoever was assigned to improvements. Nor is there any evidence that the responsible assessor considered assigning a value to them and declined to do so. The District's effort in making an omitted property assessment was not with the intent to raise the amount of an assessment deemed to be too low in value. The facts indicate that the construction and existence of improvements simply had not been noticed by the assessor charged with valuation for tax years 1980 and 1981. This court cannot conclude that this is a case

involving a previous exercise of judgment concerning improvement value.

*Id.* The court held that assessment of the taxpayer's office building improvements under § 47–831 was proper.[15] This appeal followed.

## II.

■ The principal contention here is that the taxpayer's office building was unlawfully back-assessed as omitted property under § 47–831 because the District had once and finally assessed the property in its entirety for the 1980 and 1981 tax years, and had done so with knowledge of the construction and completion of the office building. The taxpayer submits that the property escaped neither assessment nor taxation, citing among other evidence the fact that "[b]eginning in 1977 and continuing to 1980, the owner was constructing the improvements on the property, opening the building for tenants and keeping the District fully informed [of this] including the voluntary notice to the District that the building had been opened so that all income data reporting requirements could be satisfied." The taxpayer adds that "[d]uring this same period, the District was periodically and continuously inspecting the property, reviewing the construction progress, establishing assessments based on all known factors and determining not to make any supplemental assessments." Hence, the taxpayer maintains that the improvements were not omitted from assessment, but rather were assigned a zero valuation. Alternatively, it seems, the taxpayer suggests that the District actually took into consideration the value of the office building when it assessed the property, as evidenced by the increases in the property's assessment from $1,444,300 for tax year 1978 to $3,588,715 for 1979, $4,715,100 for 1980 and $5,762,900 for 1981. However, against either view we find more convincing the District's argument, accepted by the trial court, that only the taxpayer's land was assessed and that § 47–831 could therefore be used to correct the District's

15. The trial court subsequently denied the taxpayer's motion for reconsideration which raised

some of the contentions we consider to be without merit in note 20, *infra.*

inadvertent failure to initially consider the improvements in arriving at the property's assessment valuation.

Section 47–831, a statute which has been on the books in virtually its present form since 1894,[16] provides as follows:

Omitted properties; void assessments; notice and appeal.

If the Department of Finance and Revenue shall learn that *any property liable to taxation* has been *omitted from the assessment* for any previous year or years, or has been so assessed that the assessment made was void, it shall be a duty at once to reassess this property for each and every year for which it has *escaped assessment and taxation*, and report the same, through the Assessor, to the Collector of Taxes who shall at once proceed to collect the taxes so in arrears as other taxes are collected: Provided, that no property which has *escaped assessment and taxation* shall be liable under this section for a period of more than 3 years prior to such assessment, except in the case of property involved in litigation. In addition to the duties of the Assessor hereinbefore provided, it shall be the duty of the Assessor upon reassessment as herein provided to notify the taxpayer by writing of the fact of such reassessment. Any person aggrieved by any reassessment made in pursuance of this section may, within 6 months after notice of said reassessment, appeal from said reassessment in the same manner and to the same extent as provided in §§ 47–2403 and 47–2404. (Emphasis supplied.)

■ Our inquiry focuses on whether the taxpayer's improvements constituted "property liable to taxation" which was "omitted from the assessment" so that it "escaped assessment and taxation." Ultimately, this inquiry involves whether the property, under the guise of having been omitted, was simply reassessed based on a new judgment as to its valuation. For "[t]he rule approved by the great weight of authority in this country is that the power to assess 'omitted property' does not carry

with it the power to revalue property already assessed." *Hunt v. District of Columbia,* 71 App.D.C. 143, 145, 108 F.2d 10, 12 (1939) (citations omitted). Thus, to sustain an omitted property assessment under § 47–831,

"It must appear that the property itself had not been assessed at all.... It is not sufficient that the assessors, through lack of information or otherwise, have erred in their judgment of the quantity, quality, or value of the thing assessed. *Dresden v. Bridge,* 90 Me. 489, 38 A. 545 (1897). If the assessors have once assessed ... that assessment cannot be revised by a supplemental assessment."

*Hunt v. District of Columbia, supra,* 71 App.D.C. at 146, 108 F.2d at 13 (quoting *Sweetsir v. Chandler,* 98 Me. 145, 150, 56 A. 584, 586 (1903)).

It is clear to us that the taxpayer's office building was "omitted" from the 1980 and 1981 assessments and consequently "escaped" assessment and taxation for those years, as these terms are ordinarily used. The omission of the improvements (the building) from assessment is apparent in the Department's failure to indicate any office building valuation on the permanent assessment record card for the property or the notices of annual assessment sent to the taxpayer. As we related earlier, the assessment record card for tax years 1979 to 1982, inclusive, and the annual notices for tax years 1980, 1981, and 1982, reflected that the property's final assessed value each year had been attributed solely to the land: the spaces corresponding to the improvements category on the record card were *left blank,* as were the spaces on the assessment notices corresponding to the "building" legend.

While this evidence is uncontroverted, the taxpayer would have us view as compelling the evidence on the Department's cognizance of the improvements' construction and completion. There is clear proof the Department was aware of the improvements when it assessed the property for the years in question, says the taxpayer,

---

**16.** *See* Act of August 14, 1894, 28 Stat. 284, ch. 287 § 12.

and this supports the inference that the Department actually considered the improvements in making each assessment and either ascribed them a zero valuation or some valuation as reflected by the yearly increases in the property's total assessment from 1979 through 1981. Of course, if this were true, the omitted property assessment here might be considered tantamount to the revaluation of property already assessed and therefore would fall under *Hunt v. District of Columbia.*

Some Department employees unquestionably had information respecting the taxpayer's improvements when it originally assessed the property for the tax years 1980 and 1981. This is evident enough from the notations periodically made in the Department's assessment record file, such as the entry "100% complete ... 5/29/80" on the property's construction permit card.[17] But, as the trial court aptly observed, there is no indication that the Department ever made use of such information in arriving at a final assessment, or that it contemplated doing so but declined to do it. The indication more compellingly points instead to an unwitting omission by the assessor charged with appraising the taxpayer's property. It cannot be said, therefore, " 'that the assessors, through lack of information or otherwise, have erred in their judgment of the quantity, quality, or value of the thing assessed.' " *Hunt v. District of Columbia, supra,* 71 App.D.C. at 146, 108 F.2d at 13 (quoting *Sweetsir v. Chandler, supra,* 98 Me. at 150, 56 A. at 586).

Contrary to the taxpayer's assertion, the Department's failure to assign any value to the improvements on the assessment record card and annual notices of assessment does not, in our view, evidence simply the Department's ascription of a zero valuation to the improvements. D.C.Code § 47–821 requires the Mayor to "assess all

real property, *identifying separately the value of land and improvements* thereon....*"* (Emphasis supplied.) The statute pertaining to assessment notices, *id.* § 47–824(2) (1981), calls also for identification of the assessed value of both the land and improvements. Hence, one would naturally expect the Department to have documented zero valuation for the tax years in question in one of the two ways it did for tax year 1978 when the building truly had no value because construction on it had not yet commenced: on the assessment record card containing tax year 1978 entries (*see supra* note 3) the building's value is reflected numerically in one place as "0", and elsewhere with a line drawn through a space pertaining to improvement assessment.

Nor do we accept that the increases in the property's total annual assessment—from $1,444,300 for tax year 1978 to $3,588,715 for 1979, $4,715,100 for 1980, and $5,762,900 for 1981—reflects that the District actually valued the taxpayer's improvements in arriving at the final assessments. While these increases are substantial, it is well-known that the value of land at such a precious commercial location as 1111 19th Street, N.W., increased markedly, especially in those inflationary years.[18]

For these reasons, we believe that the trial court did not err, and was not clearly erroneous in concluding that the improvements were omitted from the tax years 1980 and 1981 assessments in the same sense that they were inadvertently disregarded by the Department when it arrived at the property's final assessed valuation for each year. We turn now to the taxpayer's related contention, which involves purely a question of law, that the Department's assessment of the property

---

17. It is possible, though, that the Department received mixed signals about the taxpayer's improvements. According to the notations made on the construction permit card, the improvements were 50 percent complete by June 15, 1979, and 100 percent complete by May 29, 1980. Yet, as we noted above, the taxpayer's management agent notified the Department by letter in April 1980 that the property was

"opened in mid–1979." Parts of the building conceivably may have been opened before construction on it was fully completed.

18. If the *amount* of the valuation increase for either land or improvements is questioned by the taxpayer, that is a different matter. *See* note 14, *supra.*

itself precluded any subsequent assessment under § 47–831. In resolving this issue, our focus is on whether there was "any property liable to taxation" omitted from the assessments within the meaning of the statute.

No one disputes that improvements on land are taxable as "real property," a term defined in D.C.Code § 47–802(1) (1981) (formerly D.C.Code § 47–622 (Supp. V 1978)) as "real estate identified by plat on the records of the District of Columbia Surveyor according to lot and square *together with improvements thereon.*" (Emphasis supplied.) However, the trial court construed this definition, insofar as it bears upon the omitted property statute, as being susceptible to two interpretations:

> The first is that once a taxpayer has been notified of and paid annual real estate taxes on the property, no further real estate assessment may be made. Under this view, property can be considered "omitted" only if both land and improvements have escaped taxation. A different reading would be that the property tax obligation has been fulfilled only if the taxpayer has satisfied an assessment reflecting both the elements of "real property."

*1111 19th Street Associates v. District of Columbia, supra,* 112 Daily Wash.L.Rptr. at 1321. The trial court examined the intent of the legislature as reflected by the assessment statutory scheme and pertinent decisional law, and concluded that land and improvements are severable elements of real property for purposes of assessment such that either, without necessarily the other, could be deemed omitted property under § 47–831.

"The rule approved by the great weight of authority in this country is that the power to assess 'omitted property' does not carry with it the power to revalue property already assessed." *Hunt v. District of Columbia, supra,* 71 App.D.C. at 145, 108 F.2d at 12 (citations omitted).[19] This apparently is still the general view. But the actual controversies emanate from issues involving whether particular property had previously been assessed and therefore did not qualify as "omitted property." Nationally, there is some split in the authorities on these problems involving application of that general view.[20]

We agree with the reasoning of the decisions which may be said to be headed by *Korash v. Mills,* 263 So.2d 579 (Fla.1972).[21] In *Korash,* the assessor had failed to bill the taxpayer for property taxes on a newly constructed improvement (a motel) on his property and, instead, had billed the land as though still vacant. Upon later discovering the mistake, the taxpayer was backtaxed one year on the value of the improvement (the motel). It appears that, administratively, the property record card on the valuation of the bare land had become separated from another card on which the valuation of the new motel improvement was being noted for the first time. The court stated that the "back assessment" was "in fact the initial and original assessment never theretofore assigned to the principal value of the property, a new $650,000 motel. There has been no reevaluation, no recalculation, and no reassessment of the property in this sense." *Id.* at 581. The court noted that "[i]f it were only for the purpose of an increase in the valuation of the total property," *id.* at 580, the result would be different.

**19.** That case involved taxation of personal property in the District of Columbia which was previously assessed and then revalued by the District on the strength of a new Corporation Counsel ruling. It does not approach this case factually.

**20.** Appellant refers us to *District of Columbia Redevelopment Land Agency and Bressler and Reiner, Inc. v. District of Columbia,* 106 Daily Wash.L.Rptr. 793 (May 2, 1978), as persuasive authority but that case is distinguishable. For

example, the court there found that "this is not a case where an assessment was never made on the improvements." *Id.* at 797. Here, an assessment was never made previously on the improvement, a crucial factual distinction.

**21.** Appellant is mistaken in stating that *Korash* does not accurately reflect Florida law. *See, e.g., Straughn v. Thompson,* 354 So.2d 948 (Fla. Dist.Ct.App.1978); *Underhill v. Edwards,* 400 So.2d 129 (Fla.Dist.Ct.App.), *cert. denied,* 411 So.2d 381 (Fla.1981).

The court said that, in relation to other decisions of the court, "the increase has been an attempted increase in *amount only* (after an assessment of the improvement for a total lesser *amount*) and not instances where the entire improvement was skipped and failed to be noted at all for taxation because of error or oversight as in the present case." *Id.* at 580–81. The court indicated its awareness of the need for a cut-off point on certification of the tax role, but said the court, a change reevaluating the amount will not be allowed. But "[i]f there is no new judgment being exercised, and property not theretofore included is just late in being enrolled and billed ... it is a proper assessment and is payable ... as 'escaped' property." *Id.* at 581. There had "never been any change in the tax assessor's judgment." *Id.* at 582. The *Korash* court adverted to *Markham v. Friedland*, 245 So.2d 645 (Fla.Dist. Ct.App.1971), which it said involved:

> the unusual circumstances of a difference in *judgment* by successive tax assessors, one placing a partially completed structure on the tax roll as "substantially complete" and then "after very careful consideration" striking it; the other belatedly in 1969 (after certification) trying to add the improvement as "85% complete." This falls within the "judgment exercised" theory described *sub judice*, resulting in a rare instance of precluding the back assessment of an "omitted improvement" because it really had not escaped consideration. We do not see this result as inconsistent with our view.

*Korash v. Mills, supra*, 263 So.2d at 581.

The court concluded that the case it was deciding (*Korash v. Mills*), upheld the basic purpose of taxation:

> that all taxpayers share in proportion to their assessments, the support of their government and the protection and services afforded to their property and to themselves, and that none bears an added or unfair burden by reason of other taxpayers not paying their just share. (Footnote omitted.)

*Id.* at 582.

■ We consider *Korash* to be sound law and it accords with our view of the underlying principle in this case.[22]

There is other authority on this issue which, generally speaking, views *any* subsequent increase in a tax bill on property, for whatever reason, as being a reevaluation and therefore impermissible, *e.g., Davidson v. Franklin Avenue Investment Co.*, 129 Minn. 87, 151 N.W. 537 (1915); *Leyh v. Glass*, 508 P.2d 259 (Okla.1973).[23] We do not subscribe to the basic reasoning of those cases. For the most part, they would substantially relegate the "omitted property" statutes to obscurity, as a matter of reality.

Appellant would have us apply the view that where language in a levying statute is doubtful, the doubt must be resolved in favor of the taxpayer, citing a line of cases headed by *Gould v. Gould*, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211 (1917), and *Miller v. Standard Nut Margarine Co.*, 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422 (1932). Both parties refer us to a widely acknowledged authority on statutory construction SUTHERLAND ON STATUTORY CONSTRUCTION (4th ed.). Appellant argues that we should follow the rule which provides that tax laws should be strictly construed against the state and in favor of the taxpayer. *Id.* at § 66.01. If the statute is ambiguous, says appellant, it must be construed in favor of the taxpayer, under the authority of *Gould v. Gould* and *Miller v. Standard Nut Margarine Co.* The government, on the other hand, refers us to SUTHERLAND, where he states:

> It has been declared that "[T]he power to assess property is a summary one, and ... in order to secure uniform and just taxation, which the law intends, and to protect the state's revenue against a dis-

---

**22.** *Korash v. Mills*, has also been favorably considered outside of Florida, *e.g., Okland v. Bilyeu*, 359 N.W.2d 412 (Iowa 1984); *Evans Product Co. v. Missoula County*, 201 Mont. 377, 654 P.2d 523 (1982).

**23.** Others cited to us by appellant contain material factual differences, *e.g., Bloch Pitt Invest. v. Assessor of Bernalillo County*, 86 N.M. 589, 526 P.2d 183 (1974).

honest evasion of the law, and also to protect the honest taxpayer, it is necessary that tax laws be liberally interpreted, in aid of the taxing power." SUTHERLAND STAT. CONST. § —— (4th ed.) (footnote omitted).

To this, appellant responds that the text was there referring to collection of taxes, not imposition of taxes, and that the rule relating to imposition requires just the opposite, a "liberal construction in favor of the taxpayer" standard.

Turning to this case, there is no doubt from the face of the notice of assessment sent to the taxpayer that the land was assessed and the office building (improvement) was not assessed by the District of Columbia. The assessment on the building was left blank on the card sent to the taxpayer.[24] Of that there is no question. Consequently, there is, and was, no doubt that the office building had escaped taxation. That particular property had been omitted from the separate "improvement" assessment. This brings us to the ultimate question here.

The law in this jurisdiction requires the Mayor to "assess all real property, identifying *separately the value of land and improvements* thereon, and administer and collect the real property tax within the District." D.C.Code § 47–821(a) (1981) (emphasis added). As indicated, the District omitted to place a value on the existing building (improvement) on the land. The taxpayer was aware that an assessment for this downtown office building (1111 19th Street, N.W.) was omitted, and a hefty tax was thus erroneously not to be charged on this tax account. Due to the error, for that period the taxpayer escaped substantial taxation and this was readily apparent to the taxpayer.

Under the circumstances of this case, we consider that under the statute (D.C.Code § 47–831 (1981)), the office building here was "property liable to taxation," but "ha[d] been omitted from the assessment," *id.*, for a previous year. Furthermore, on these facts it was plain to the taxpayer that a considerable tax was justly owing and was inadvertently not being collected by the District of Columbia government.

If a lot has an improvement on it, the total property consists of land and an improvement. If we speak only of the land, we are not addressing the property in its totality as it has two segments, which are required by statute in this jurisdiction to be assessed, the land and the improvement. If one segment (the office building) has been plainly omitted from assessment, then property has been omitted. As stated, the statute requires that the land and improvement be separately assessed. Otherwise, the property in its totality has not been assessed until the land and improvement have each been assessed. The property has not truly been assessed, as there is property (the building) omitted from assessment, under the statute.

Appellant's argument is that the "assessor had the opportunity to consider the improvements or any other relevant facts on the annual valuation date and having done so, could not later change the assessment based on the same facts known when making the annual assessment." There is the heart of the matter. Appellant views this as a change of judgment by the government. The government, on the other hand, in effect, says the statute is designed to enable correction of a prior mistake, a mistaken omission.

As we have indicated, in this jurisdiction, land and an improvement thereon (a building) are separately assessed. The Mayor is required to "assess all real property, identifying separately the value of land and improvements thereon...." D.C.Code § 47–821(a) (1981). The Mayor is also directed each year to "compile" and "place in a book, known as the preliminary assessment roll, the ... value ... of the land and improvements of all real property...." D.C.Code § 47–823 (1981); and taxpayers are required to be informed, separately, of the annual assessments.

---

**24.** *See* note 14, *supra,* relating to the separate proceeding pending in relation to the amount of

value of the land and improvements. D.C. Code § 47–824 (1981).

Here, the government clearly omitted by mistake to assess the office building and left the appropriate box for the building assessment blank on the notification to the taxpayer. We should think it is apparent that this was an error made, not a judgment reached. It was therefore within the reach of the "omitted property" statute.

We agree with the decision reached by the trial court. This result is in furtherance of the fair "sharing of the financial burden of the government." D.C.Code § 47–801 (1981). This is a goal which should be sought. The outcome of this case is legally and equitably justified.[25]

*Affirmed.*

---

25. The taxpayer also contends, as he did below, that the District's assessments under the omitted property statute were untimely. As the trial court observed, the statutory three-year limitation period contained in § 47–831 runs from the date the property escaped assessment and taxation—here, January 1, 1979, the valuation date for tax year 1980. *1111 19th Street Assoc. v. District of Columbia, supra,* 112 Daily Wash.L. Rptr. at 1323 n. 3. The omitted property assessments of the taxpayer's improvements were made in late 1981, clearly before expiration of the statutory period and were not untimely.

The taxpayer also contends that (1) the trial court erred in failing to consider its "substantial" due process and equal protection claims under the constitution, and (2) the assessments here were impermissibly made at the direction of the Office of Corporation Counsel. These contentions are without merit.

Given the result of this appeal, we need not reach the taxpayer's last contention that it is entitled to an award of attorney fees and interest on the taxes paid.