**DISTRICT OF COLUMBIA, Appellant,**

v.

**CASINO ASSOCIATES, LTD., Appellee.**

No. 94–TX–1018.

District of Columbia Court of Appeals.

Argued Sept. 17, 1996.
Decided Oct. 17, 1996.

Martin B. White, Assistant Corporation Counsel, Washington, DC, with whom Charles F.C. Ruff, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellant.

Joseph A. Rieser, Jr., Washington, DC, with whom A. Scott Bolden and Eric A. Welter were on the brief, for appellee.

Before FARRELL and REID, Associate Judges, and MACK, Senior Judge.

FARRELL, Associate Judge:

This is an appeal by the District of Columbia from a decision of the Superior Court on summary judgment invalidating supplemental tax assessments against real property owned by appellee, Casino Associates, Ltd. ("Casino Associates" or "appellee"). The issue before us concerns the meaning of the District's statutory duty to reassess real property that is liable to taxation but "has been so assessed that the assessment made was void." D.C.Code § 47–831 (1990). In this case, after the assessments on the property in question had been nullified on administrative appeal, the District reassessed the

property on the basis of information not relied on in the original assessments which demonstrated, in its view, that the property was liable to taxation. The trial court, without opinion, determined that § 47–831 did not permit reassessment in these circumstances and that, even if it did, principles of administrative *res judicata* barred the reassessment. We reverse and hold that, on the assumption that the property was indeed liable to taxation, the statute authorized the reassessment.

## I.

The case originated with supplemental tax assessments which the District made against improvements on certain real property for the tax year 1993 ("tax year" at the time meaning the period from July 1, 1992, through June 30, 1993). The property is located at 1401 H Street, N.W. During 1992, an office building was under construction at the site. The original tax year 1993 assessment specified the value of the land as $35,743,776 and the value of improvements as $0, reflecting the incomplete state of the building construction.

In August 1992, appellee Casino Associates, Inc. received notice from the Department of Finance and Revenue (DFR) of a supplemental assessment for the first half of tax year 1993. The assessment was based on DFR's understanding that construction of the building was now 65% complete. *See* D.C.Code § 47–829(d)(1)(C) (1996 Supp.).[1] The value assigned to the building in the supplemental assessment was $30,090,000, raising the total assessment for the property to $65,833,776, with a corresponding increase in the tax obligation. Casino Associates paid the increased taxes and appealed to the Board of Equalization and Review (the Board), D.C.Code § 47–825(i) (1990),[2] presenting evidence that the building was not

65% complete as required. The Board agreed, determined that no supplemental assessment was authorized, and reduced the assessment on the property for the value of the improvement to $0.

Similar events took place for the second half of tax year 1993. On or about February 24, 1993, DFR notified Casino Associates that it was making a supplemental assessment for the second half of the tax year, again based on the department's understanding that the building had reached 65% completion. While the assessed value of the land remained $35,743,776, the improvements were said to be worth $21,046,304. Casino Associates paid the additional taxes and challenged the second-half supplemental assessment. The Board agreed with it that the building still had not reached 65% completion, and again reduced the assessment attributable to the building to $0.

Thereafter, on July 30, 1993, DFR notified Casino Associates that it was reassessing the property, including the building, in accordance with D.C.Code § 47–831, for both halves of tax year 1993. The reason stated was that an independent ground for assessment of the improvements existed in that D.C.Code § 47–829(e)(2) (1996 Supp.) requires that an improvement under construction be assessed and added to the assessment roll whenever a certificate of occupancy for the real property has been issued.[3] Apparently unknown to DFR at the time, and therefore not brought to the Board's attention in defense of the assessments, was the fact that certificates of occupancy had been issued for parts of the building during 1992. The announced reassessment reflected DFR's understanding that the Board's rejection of the two supplemental assessments was a determination that each assessment was "void," thus triggering the Department's

---

**1.** "The Mayor shall assess the estimated market value of all real property, by lot and square, if since the last annual or supplemental assessment … [t]here is construction in progress and at least 65% of the total estimated construction has occurred…." D.C.Code § 47–829(d)(1)(C).

**2.** The Board has since been replaced by the Board of Real Property Assessments and Appeals. D.C.Code § 47–825.1 (1996 Supp.).

**3.** Section 47–829(e)(2) (1996 Supp.) requires the Mayor to "assess the estimated market value of all real property … if since the last annual or supplemental assessment … [t]here is construction in progress … and … [a] certificate of occupancy for the real property has been issued."

duty to reassess property liable to taxation under § 47–831. Accompanying the letter were assessment notices reflecting the reassessments for tax year 1993 and a tax bill stating the increased amounts due.

Casino Associates paid the increased tax and appealed the reassessment by petition in Superior Court. D.C.Code § 47–831 (incorporating D.C.Code § 47–3303). It argued first that the reassessment was not authorized by § 47–831, and that in any case the District was barred by principles of administrative *res judicata* from relitigating the supplemental assessments by means of a § 47–831 reassessment, having had full opportunity, but failed, to defend them on the basis of the certificates of occupancy before the Board. Casino Associates also argued that the reassessment denied it due process of law. The trial court agreed with the first two arguments and did not reach the third. It ordered refund of the taxes paid pursuant to the reassessment, with interest.[4]

## II.

■ In relevant part, D.C.Code § 47–831 provides:

> If the Department of Finance and Revenue shall learn that any property liable to taxation has been omitted from the assessment for any previous year or years, *or has been so assessed that the assessment made was void,* it shall be a duty at once to reassess this property for each and every year for which it has escaped assessment and taxation, and report the same, through the Assessor, to the Collector of Taxes who shall at once proceed to collect the taxes so in arrears as other taxes are collected: Provided, that no property which has escaped assessment and taxation shall be liable under this section for a period of more than 3 years prior to such assessment, except in the case of property involved in litigation.... [Emphasis added.]

The statute thus requires DFR to reassess property that is liable to taxation and has either "been omitted from the assessment" previously or "has been so assessed that the

assessment made was void." The aim of the statute is to capture to the tax rolls property that "has escaped assessment and taxation," in furtherance of "the [goal of] fair 'sharing of the financial burden of the government.'" *1111 19th Street Assocs. v. District of Columbia,* 521 A.2d 260, 271 (D.C.) (quoting D.C.Code § 47–801 (1990)), *cert. denied,* 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987).

We have not had occasion to interpret the "void" assessment clause of the statute. In *1111 19th Street Assocs.,* we construed the "omitted" property clause in holding that improvements to real property had been omitted from the tax rolls, and could be back-assessed, because the building had been mistakenly omitted from the assessments even though the land had been assessed and taxed during the period in question. The District does not conceptualize the improvements in this case as "omitted" property, because they *had* been assessed for tax year 1993—though, as the Board determined, erroneously. Instead the District argues, as it did in the trial court, that the Board's invalidation of the assessments made them "void" within the meaning of § 47–831, and the previous issuance of the certificates of occupancy made the building (or at least parts of it) liable to taxation and so triggered the statutory duty to recapture to the tax rolls property that otherwise would "escape[ ] assessment and taxation."

Casino Associates argues, to the contrary, that the Board's decisions did not render the assessments "void" but instead only "reduced [them] to zero." In its view, the void-assessment clause is most naturally read to include only assessments that have been declared void on procedural grounds such as failure to give required notice, not those as to which the Board has reached "the merits ... under the applicable substantive statutory standard." Appellee asserts this reading to be most consistent with the words "property ... *so assessed* that the assessment made was void" (emphasis added), with the statutory scheme at large, and with this court's affirmance of the principle in *1111 19th Street Assocs., supra,* that § 47–831 may not be

---

4. A subsequent order not relevant to this appeal reduced the amount of the refund.

used as a device for DFR to revalue property for the same tax year when it has once made a "judgment" about the value of the property.

Casino Associates' arguments are not without force. For the reasons that follow, however, we agree with the District that § 47–831 authorized the reassessment on the assumption that the certificates of occupancy had been issued.[5] At best for Casino Associates, the statute is ambiguous on whether it embraces as "void" assessments invalidated on "substantive" and not merely procedural grounds. As we have stated previously in the taxation context, however, "courts . . . defer to reasonable administrative understandings of uncertain legislative commands," and if the Mayor's interpretation of equivocal statutory language is "reasonable" we will accept it. *District of Columbia v. Willard Assocs.*, 655 A.2d 1237, 1241 (D.C.1995).

No doubt a significant part of what "property . . . so assessed that the assessment made was void" is meant to cover concerns procedural irregularities of the kind Casino Associates cites, such as failure to give required notice of the assessment, *see, e.g., Rodney Square Investors v. Board of Assessment & Review of New Castle County,* 448 A.2d 237 (Del.Super.Ct.1982), or the untimeliness of an assessment. *See 1111 19th Street Assocs.,* 521 A.2d at 263 (though not relevant to issue on appeal, District internally had taken position at earlier date that supplemental assessment "was invalid" because untimely made). But we see no reason why DFR could not fairly interpret that language to include a failure to meet a statutory precondition to assessment such as § 47–829 contains. The section permits supplemental assessments only if the conditions set forth therein are satisfied, including the 65% completion requirement of § 829(d)(1)(C). If these conditions are not fulfilled, DFR has no authority to make a supplemental assessment. On a natural understanding of the word, an assessment invalidated because it lacks that authority is "void." *See, e.g.,* BLACK'S LAW DICTIONARY 1573 (6th ed.1990)

(defining "void" as "having no legal force or binding effect"). *See also Lake Worth Towers, Inc. v. Gerstung,* 262 So.2d 1 (Fla.1972) (assessment on improvements "void," hence excusing taxpayer's default in challenging it, because improvements not shown to have been "substantially completed" as required by statute). In effect, invalidation on that ground is no different than if an ordinance authorizing the assessment had been declared invalid. *See Winnetka Park Dist. v. Hopkins,* 371 Ill. 46, 20 N.E.2d 58, 60 (1939) (recognizing validity of reassessment after proper reenactment of invalid ordinance). The Board did not nullify the supplemental assessments by disagreeing with DFR's estimate of the "market value" of the property (§ 47–829(d)); its actions, that is, were not the equivalent of reducing the building assessment to $1 instead of $0, as Casino Associates suggests ("[H]ad the BER reduced the original assessments to $1.00, the District clearly could not claim that the reassessments at issue here were permitted"). Rather, it found that since the threshold completion standard was not met, the building should not have been assessed at all. Nullification of the assessments thus deprived them of legal force and made them "void" within a reasonable interpretation of § 47–831.

Casino Associates argues that the District's reading of the statute would permit it to circumvent Board decisions finding property ineligible for supplemental assessment. D.C.Code § 47–830 (1996 Supp.) permits a real property owner aggrieved by a supplemental assessment under § 47–829 to appeal administratively and judicially. The government has no corresponding right. *See District of Columbia v. Galliher,* 656 A.2d 296, 301–02 n. 14 (D.C.1995). Yet, Casino Associates contends, DFR could challenge a Board decision indirectly by reassessing on the ground that the Board held the original assessment "void," then defending the original assessment in an action by the taxpayer challenging the reassessment. The District counters that this concern is not raised here because DFR reassessed not out of disagreement with the Board's rulings, but because

---

**5.** As the District concedes, in further proceedings Casino Associates may dispute whether the certificates had in fact been issued and may raise any issues it desires to about the magnitude of the assessment.

an *independent* basis existed why the property was liable to taxation. Casino Associates' concern is relevant to a proper reading of the statute, but we think the antidote it proposes is excessive. Limiting the void-assessment clause to assessments voided only on procedural grounds is conceptually unsatisfactory, for the reason already stated. But, as the District acknowledges, a more natural limitation on the statute would read it consistently with traditional principles of issue preclusion, which would bar relitigation of decisions on an issue such as the 65% completion threshold. Though we need not decide the issue here, the likelihood of preclusion satisfies us that the District's reading of § 47–831 does not overreach in the way Casino Associates contends.

Appellee further argues that the District's reading of the statute conflicts with our holding in *1111 19th Street Assocs., supra.* We disagree. There we upheld a back-assessment of improvements as previously "omitted" property under § 47–831 because the record supported a finding that the original assessments—of the land only—had "unwittingly" or "inadvertently" failed to take account of information in DFR's files that made the improvements liable to taxation. 521 A.2d at 267, 270, 271. That the omission "was an error made, not a judgment reached," *id.* at 271, was decisive because of " '[t]he rule approved by the great weight of authority in this country' "—and followed in this jurisdiction—" 'that the power to assess "omitted property" does not carry with it the power to revalue property already assessed.' " *Id.* at 266 (quoting *Hunt v. District of Columbia,* 71 App. D.C. 143, 145, 108 F.2d 10, 12 (1939)). Interestingly, as an example of a forbidden "new judgment as to ... valuation" under "the guise of [the property] having been omitted," *id.* at 266, we cited a Florida case that involved "the unusual circumstances of a difference in *judgment* by successive tax assessors, one placing a partially completed structure on the tax roll as 'substantially complete' and then 'after very careful consideration' striking it; the other belatedly ... trying to add the improvement as '85% complete.' " *Id.* at 269 (emphasis in *1111 19th Street Assocs.*) (quoting *Korash v. Mills,* 263 So.2d 579, 581 (Fla.

1972) (in turn describing facts in *Markham v. Friedland,* 245 So.2d 645 (Fla.Dist.Ct.App. 1971))). The parallel in this case would be a new determination for the 1993 tax year that the improvements had been 65% completed; but that did not happen. Instead, it is not disputed that the original assessment took no account of the certificates of occupancy as a separate basis for assessing the improvements at least partially. In the words of *1111 19th Street Assocs.,* "[T]here is no indication that the Department ever made use of [the fact of the occupancy permits] in arriving at a final assessment, or that it contemplated doing so but declined to do it." *Id.* at 267. As in that case, reassessment of the improvements was therefore warranted here because a "tax was justly owing and was inadvertently not being collected by the District of Columbia government." *Id.* at 270.

### III.

 Finally, Casino Associates relies on the claim preclusion aspect of *res judicata* in arguing that DFR forfeited its ability to assess the improvements based on the certificates of occupancy by failing to assert that basis during the full and fair opportunity it had to defend the assessments before the Board. *See, e.g., Rhema Christian Center v. District of Columbia Bd. of Zoning Adjustment,* 515 A.2d 189, 192 (D.C.1986) (final administrative decisions bearing the indicia of a judicial proceeding generally will be accorded preclusive effect by courts). The answer to this contention lies in a traditional limitation upon *res judicata.* RESTATEMENT (SECOND) OF JUDGMENTS § 83(3) (1980) provides that decisions of administrative tribunals do not have preclusive effect "if the scheme of remedies permits assertion of the second claim notwithstanding the adjudication of the first claim"; and § 83(4)(b) states that such decisions do not have preclusive effect if preclusion would be inconsistent with "a legislative policy that ... [t]he tribunal in which the [relevant] issue subsequently arises be free to make an independent determination of the issue in question." Section 47–831, as interpreted in *1111 19th Street Assocs.,* seems to us a clear legislative command that property that is liable to, but has

escaped, taxation during the previous three years is to be back-assessed regardless of a mistake by DFR in failing to recognize the basis for taxation. The underlying purpose of the statute is "'that all taxpayers share[,] in proportion to their assessments, the support of their government ... and that none bears an added or unfair burden by reason of other taxpayers not paying their just share.'" *1111 19th Street Assocs.*, 521 A.2d at 269 (quoting *Korash*, 263 So.2d at 582). *See also The Washington Post Co. v. District of Columbia*, 596 A.2d 517, 520 (D.C.1991) (noting that "Congress enacted the present real property tax law in part to insure '[e]quitable sharing of the financial burden of the government of the District of Columbia,'" quoting D.C.Code § 47–801(1)). If in fact occupancy permits had been issued, the Board's reason for holding the assessments void did not affect the liability of the improvements to taxation. Leaving the property unassessed would shift the burden of taxation to others not lucky enough to have benefitted from DFR's mistake. We therefore reject the argument of claim preclusion.[6]

Reversed and remanded.

6. Casino Associates' due process argument, not reached by the trial court, has not been raised on appeal as an alternate ground in support of the judgment. There is no merit to it in any event.

In permitting recapture of property liable to taxation in the circumstances presented here, the statute does not upset justified reliance or otherwise operate unfairly.