SCHOOL STREET ASSOCIATES LIM-ITED PARTNERSHIP, et al. (97–TX–1442) and Sovran Bank/D.C. National (97–TX–2001), Appellants,

v.

DISTRICT OF COLUMBIA, Appellee.

Nos. 97–TX–1442, 97–TX–2001.

District of Columbia Court of Appeals.

Argued En Banc May 9, 2000.
Decided Jan. 4, 2001.

---

Ralph A. Taylor, Jr., Washington, DC, for appellants School Street Associates Limited Partnership, et al.

Herman B. Rosenthal, with whom Richard J. Magid, Baltimore, MD, was on the brief, for appellant Sovran Bank/D.C. National.

Lutz Alexander Prager, Assistant Deputy Corporation Counsel, with whom Robert R. Rigsby, Corporation Counsel, and Charles L. Reischel, Deputy Corporation

Counsel Appellate Division, were on the brief, for appellee.

Before WAGNER, Chief Judge,
TERRY, STEADMAN, SCHWELB,
FARRELL, REID, GLICKMAN and
WASHINGTON, Associate Judges.

On Rehearing En Banc

STEADMAN, Associate Judge:

Before us for en banc review are two tax appeals.[1] Both require us to interpret the provision of the District of Columbia income and franchise tax statute permitting the deduction of a net operating loss ("NOL"). *See* D.C.Code § 47–1803.3(a)(14) (1997). That code section in general allows a deduction for a net operating loss incurred in one year against the net income of the taxpayer in a prior or subsequent year.[2]

Appellant School Street Associates ("School Street") is a limited partnership investing in District real estate. In contrast to federal law, such partnerships are taxed in the District as distinct taxable entities. School Street sought to deduct its prior losses against current income. Appellant Sovran Bank/D.C. National ("Sovran Bank") is a wholly-owned subsidiary of a national corporation. Sovran and its affiliates elected to file federal consolidated returns for the years in question. Generally, however, income and deductions of corporations required to file separate District returns are not treated on a consolidated basis, regardless of the federal filing status. Hence, Sovran filed separate District franchise tax returns reflecting only its own yearly income and losses.

Having suffered a loss in one taxable year, Sovran sought to apply the loss against its taxable income in prior years.

The District disallowed the net operating loss deductions sought to be taken by both entities on their District returns because the deductions did not appear on a corresponding federal tax return relating to those entities. We hold that this refusal to allow the NOL deductions is incompatible with a straightforward reading of the statutory provision in light of the overall structure of District tax law, which differs in dispositive respects from federal tax law. We focus in particular on the application of the statute to the School Street partnership, since the District concedes that if the deduction is properly permitted to School Street, it can discern no principled way in which Sovran can be denied the deduction as well.

## I. Background

### A. Overview of Tax Structure

#### 1. Federal taxation of partnerships and affiliated corporations.

We begin our analysis with a brief examination of the relevant federal tax structure and the manner in which the District tax law differs. The federal Internal Revenue Code of 1986, 26 U.S.C. § 1 to § 9722 (1998) ("IRC"),[3] defines income tax in Subtitle A, Chapter 1, Subchapter A, which establishes a separate tax for individuals (Part I) and for corporations (Part II). *See* IRC §§ 1, 11. An affiliated group of corporations have the option of combining

---

1. The panel opinions, vacated by the en banc order granting review, are *School Street Assocs. Ltd. Partnership v. District of Columbia,* 728 A.2d 575 (D.C.1999) and *Sovran Bank/ D.C. National v. District of Columbia,* 731 A.2d 387 (D.C.1999). The en banc order instructed the parties to brief only the issue of statutory interpretation. Given our holding, we do not address appellants' additional arguments to the respective divisions that the adoption of the District's interpretation would both be unconstitutional and violate the District's Home Rule Act.

2. In principle, the concept is a simple one. If a business loses $10,000 in one year and the next year earns a profit of $20,000, its net taxable income in the second year would only be $10,000. Thus, the NOL deduction spreads out, so to speak, profits and losses over a longer period than a single tax year.

3. Amendments to the 1986 version of the IRC are noted where relevant.

their incomes and deductions in a single return. *See* IRC § 1501. Under these so-called "consolidated returns," losses incurred by some affiliated members may be used to offset the income of other affiliated members. *See* 26 C.F.R. § 1.1502–11 (2000).[4]

The way in which partnerships are treated within the federal framework is addressed in Subchapter K of the IRC. This subchapter provides that businesses taking the partnership form are treated as pass-through entities for their principals. *See* IRC §§ 701–02. "Pass-through" enterprises are those for which losses or gains are not recognized by the entities themselves, but are allocated to the incomes of the organizations' owners in their capacity as individual taxpayers. These partnerships are nonetheless required to file informational returns under the IRC indicating business performance. *See* IRC § 6031(a).

Net operating loss deductions are generally covered under IRC § 172. That section defines an NOL as the excess of deductions allowed over gross income. *See* IRC § 172(c). Subsection (a) of that section defines an NOL deduction as the combined net operating loss carry-backs and net operating loss carry-forwards allowed for any particular taxable year. At the times relevant to these appeals, net operating losses incurred in one tax year could generally be carried back three years, while such losses could be carried forward up to fifteen, *see* IRC § 172(b)(1)(A),[5] although bad debt losses of commercial banks could be carried back as many as ten years or forward as many as five, *see* IRC § 172(b)(1)(D).

Because partnerships are treated as pass-through entities, and pay no taxes as such, NOL deductions are inapplicable to a partnership's federal informational return. *See* IRC § 703(a)(2)(D). Nonetheless, a partnership's informational return discloses the fact and amount of any actual net operating loss, and any such loss may be passed through to the individual tax payers and offset against other income or to be used as a deduction in a prior or subsequent return. *See* IRC §§ 172, 6031(a); 26 C.F.R. § 1.702–2. In the context of the consolidated return of affiliated corporations, NOL deductions are, like income and other losses, treated on a consolidated basis. *See* 26 C.F.R. §§ 1.1502–11(a)(2), –21(b). Similar to a partnership's informational return, however, each member of a group filing a consolidated return must report its separate respective taxable income and losses, and losses of one member may offset the income of another within a given year. *See* 26 C.F.R. § 1.1502–75(j). In addition, both consolidated net operating losses (as reported in a consolidated return), and net operating losses of individual affiliated member corporations which arose in years where separate returns were filed, may provide the basis for a consolidated net operating loss deduction on a consolidated return. *See* 26 C.F.R. § 1.1502–21(a).

2. **District taxation of partnerships and affiliated corporations.**

In marked contrast to the federal system, the District treats most unincorporated businesses as taxable entities in their own right, and rarely allows the use of consolidated returns. Under the District's tax structure, individuals, corporations, and unincorporated businesses are all separately subject to taxation under D.C.Code § 47–1801.1 to § 47–1816.3 (1997). A corporation includes trusts, associations, and companies that are classified as corpora-

---

4. IRC § 1502 specifically authorizes the Secretary of the Treasury to promulgate regulations which determine the tax liability for corporations participating in a consolidated return. Citations to the Code of Federal Regulations reflect the exercise of that authority.

5. Subparagraph (A) was subsequently amended to contract the carry-back period to two years and to expand the carry-forward period to twenty years. These changes, however, are irrelevant to our discussion here.

tions under the federal IRC, and also includes financial institutions. *See* D.C.Code §§ 47–1801.4(16), –1807.1(1). An unincorporated business is sweepingly defined as any trade or business conducted or engaged in by any non-corporate entity, with four express exceptions. *See* D.C.Code § 47–1808.1. The most significant are the exceptions for a trade or business in which more than 80% of the gross income is derived from personal services and in which capital is not material, and for "professional corporations" under Chapter 6 of Title 29 of the D.C.Code, such as law firms, accounting firms, engineers, and medical practitioners. *See id.* Such excepted trades or businesses are treated as pass-through entities. *See* D.C.Code § 47–1808.6.

In the District, individuals are taxed on personal income, while a franchise tax is levied against the income of all taxable business entities "for the privilege of carrying on or engaging in any trade or business within the District." D.C.Code § 47–1807.2(a). "Income" for all categories of taxpayers is defined in detail in subchapter III. Subchapter VII establishes the franchise tax for corporations and financial institutions; subchapter VIII establishes the franchise tax for unincorporated businesses. Subchapters VII and VIII are in many respects parallel, and both indirectly refer to subchapter III for a definition of taxable income.[6] *See* D.C.Code § 47–1807.1(2) & § 47–1808.2(1).

To avoid double taxation for unincorporated business activity, "the distributive share of a trade or business net income that is subject to the unincorporated business franchise tax" is excluded from calculation of an individual owner's gross income. D.C.Code § 47–1803.2(a)(2)(D). The structure of a business in the District, incorporated or unincorporated, typically will not have significant local tax consequences insofar as the business itself is concerned because both classifications are treated similarly by the District tax code. Regulations support this intent, explaining that

> the design of the unincorporated business tax under the law is to impose a tax upon all business income which would be subject to the corporation franchise tax (as though the business were incorporated), without regard to whether the business is carried on by an individual, a partnership, or some other unincorporated entity.

9 DCMR § 117.1 (1996).

The District treats affiliated corporations differently from the manner in which they are treated under federal regulations. Specifically, District law requires most such corporations to file separate returns, even where they have participated in a federal consolidated return. D.C.Code § 47–1805.2(5)(B) provides: "Affiliated corporations (including affiliated incorporated financial institutions) shall file separate returns unless permitted by the Mayor to file consolidated returns." Along with this general prohibition against consolidated returns, the regulation allowing for exceptions is narrow. Most importantly, under the regulations enforcing § 47–1805.2(5)(B), a consolidated return may be filed only by affiliated groups where all members are "subject to the District franchise tax on one hundred percent (100%) of net income from trade or business subject to apportionment." In other words, if a group filing a federal consolidated return includes at least one corporation outside the District's tax jurisdiction, then each individual member of the group within the jurisdiction must file a separate return. 9 DCMR § 109.1. Thus, under most circumstances, participation in filing a federal consolidated return by a corporation doing business in the District would have no readily discernible effect on the corporation's tax liability under the District's franchise tax—whether filing a federal consolidated return or not, the corporation would

---

**6.** Subchapter X, referenced in both franchise tax sections of the Code, defines "taxable income" based on the definition of net income in subchapter III.

file an individual District return, and pay local taxes according to that return.

Prior to 1987, no business, whether incorporated or not, and without regard to whether it had filed a federal consolidated return, could take advantage of a net operating loss deduction for District tax purposes. Each tax year was treated as a unit unto itself without regard to past or future gains or losses of the enterprise. However, in 1987, in an effort to bring the District tax law into greater conformity with the IRC without any overall increase in District taxes, the Council of the District of Columbia enacted the Tax Conformity and Revision Amendment Act ("the Act"). Among its numerous provisions, the Act added a net operating loss deduction provision to the list of income deductions set forth in D.C.Code § 47–1803.3:

> (a) Deductions allowed.—The following deductions shall be allowed from gross income in computing net income of corporations, financial institutions, unincorporated businesses and partnerships:
>
> . . .
>
> (14) Net operating losses.—In computing the net income of a corporation, an unincorporated business, or a financial institution, there shall be allowed a deduction for net operating losses, in the same manner as allowed under § 172 of the Internal Revenue Code of 1986 and as reported on any federal tax return for the same taxable period, except that no net operating losses may be carried back to any year ending before January 1, 1988.

The interpretation of D.C.Code § 47–1803.3(a)(14) and its interaction with the IRC is the issue debated by the parties and now before us for resolution on this appeal.[7]

## B. Facts

### 1. School Street

School Street is a District of Columbia limited partnership that meets the statutory definition of an unincorporated business under D.C.Code § 47–1808.1.[8] As such, it is subject to the District's franchise tax, although it serves only as a pass-through entity under the federal tax scheme. The partnership is primarily owned by non-residents of the District; however, it derives all of its revenue from activity within the District, specifically through operation of real estate located at 500 E Street, SW.

Between 1982 and 1991, School Street suffered net operating losses totaling $6,079,396, which were reflected in its federal informational returns. In 1992, School Street generated positive income, and claimed a carry-forward deduction of its prior losses against this income pursuant to its reading of § 47–1803.3(a)(14). In 1994, the District of Columbia Department of Finance and Revenue (now the Office of Tax and Revenue or "OTR"[9]) notified School Street that it was disallowing the NOL deduction. School Street petitioned for review in the Tax Division of the Superior Court. Both parties argued for summary judgment in their favor based solely on the legal question of statutory interpretation. The court accepted

---

7. A 1999 amendment to § 47–1803.3(a)(14) changed the net operating loss deduction to allow businesses to take certain District-specific deductions, while eliminating any carrybacks of the deduction. See "Service Improvement and Fiscal Year 2000 Budget Support Act of 1999: Tax Parity Act of 1999," D.C.Law 13–38 (1999). These changes do not apply to the tax years at issue here and we do not undertake to rule on the application of the statute as presently amended.

8. School Street is joined in this appeal by several tiers of partners of the business itself, including School Street's own general partners, First City Properties–E Street, Inc. and Boston School Associates Limited Partnership; Boston School Associates Limited Partnership's general partner Boston School Associates; and Boston School Associates' general partners, Mortimer B. Zuckerman and Edward H. Linde.

9. See 44 D.C.Reg. 2345 (April 18, 1997).

the District's argument that § 47-1803.3(a)(14) is not applicable to such unincorporated businesses because of what the District reads as limiting references in the subsection to the federal tax law. School Street appeals from that ruling.

## 2. Sovran

Sovran was originally chartered as D.C. National Bank. a national bank with its principal office in Washington, D.C. As a financial institution, D.C. National Bank was subject to the D.C. corporation franchise tax under D.C.Code § 47–1807.1(1) to § 47–1807.2.[10] Following a series of mergers involving D.C. National Bank's parent institution, including a merger into Sovran Financial Corporation, D .C. National Bank (now Sovran) became a member of an affiliated group of corporations within the meaning of IRC § 1504. As such, Sovran participated in filing consolidated federal tax returns along with the other affiliated members for the period at issue. The majority of the other corporations participating in the federal consolidated return, however, were not subject to District taxation.[11]

In 1991, Sovran reported to the IRS on the consolidated federal income tax return of the affiliated group that it had sustained a separate NOL of $113,050,947, independent of any income, loss, deduction, or other offset by any other affiliated member. This NOL was, in part, applied in 1991 to offset the federal income of the other affiliates. The remaining NOL was carried back as a deduction on the federal consolidated returns of the group for years preceding 1989,[12] and thus used to offset the taxable income realized in those years

by the group, most of whom were not subject to District taxation. In this manner, Sovran's NOL sustained in 1991 was fully absorbed on the federal level by the taxable income reported by other corporations within its affiliated group during the years preceding 1989, and in 1991. Sovran's 1991 NOL was therefore not available to be used as a deduction to the federal consolidated returns for 1989 and 1990, and no consolidated NOL deduction was taken in those years.

Sovran's participation in the filing of consolidated federal returns notwithstanding, it was required under D.C.Code § 47–1805.2(5)(B) and 9 DCMR § 109.1 to file separate District tax returns for the years 1986 through 1991 because not all of its affiliated corporations were subject to District franchise taxation. In its amended separate returns filed with the District for each of the years 1988, 1989 and 1990, Sovran carried back its 1991 NOL as a deduction. The District did not dispute Sovran's NOL deduction for 1988, presumably because that deduction had appeared on the federal return for that year. However, the District disallowed the NOL deductions for 1989 and 1990 because no NOL deductions were reported on Sovran's federal (consolidated) returns for those years. Sovran subsequently filed suit in the Tax Division of the Superior Court. The court granted the District's motion for summary judgment. The court adopted the District's interpretation of the statute and held that Sovran's failure to show an NOL deduction on its federal return for the years in question precluded an NOL deduction on its District return. Sovran appeals from this ruling.

10. With regard to the application of § 47–1803.3(a)(14), our decision here is controlling both to Sovran as a "financial institution" as well as to any other corporation or financial institution subject to District taxation. Throughout the opinion, therefore, the terms "corporation" and "financial institution" are used interchangeably, unless otherwise noted.

11. After the years at issue here, Sovran merged into NationsBank, N.A., a subsidiary

of NationsBank Corporation. In turn, the Bank of America Corporation merged into NationsBank Corporation, whose name was changed to Bank of America Corporation and which is a publicly traded stock.

12. NOL carry-back deductions must be applied first to the earliest possible tax years. *See* IRC § 172(b)(2).

## II. Standard of Review

■ We initially take note of several principles to guide our mode of review. "Decisions of the Superior Court in civil tax cases are reviewable in the same manner as other decisions of the court in civil cases tried without a jury." D.C.Code § 47–3304(a); *see District of Columbia v. Acme Reporting Co.,* 530 A.2d 708, 711–12 (D.C.1987). Although the Tax Court is a specialized tribunal, " 'regard for the special function and competence of the Tax Court does not warrant avoiding our responsibility of reaching a decision of our own.' " *Id.* at 712 (quoting *District of Columbia v. Seven–Up Washington,* 93 U.S.App.D.C. 272, 275, 214 F.2d 197, 200 (1954)).

■ In addition, we owe a level of deference to OTR's interpretation of its governing statute. *See Hotel Tabard Inn v. District of Columbia Dep't of Consumer & Regulatory Affairs,* 747 A.2d 1168, 1174 (D.C.2000). Nonetheless, that interpretation only "should be followed when it 'is reasonable and does not contravene the language or legislative history of the statute.' " *District of Columbia v. Pierce Assocs., Inc.,* 462 A.2d 1129, 1130 (D.C.1983); *see also Hotel Tabard Inn, supra,* 747 A.2d at 1174 (agency interpretation must not be unreasonable or inconsistent with legislative purpose); *Dankman v. District of Columbia Bd. of Elections & Ethics,* 443 A.2d 507, 514–15 (D.C.1981) (en banc) (holding agency's interpretation was due no deference where it "restricted rather than implemented the basic purpose of the [relevant act]"). Thus, "we have rejected agency interpretations that, in our judgment, contravened plain statutory language or clear legislative history. In such situations, we have not hesitated to reverse even when the agency has special expertise that would usually cause us to defer." *United States Parole Comm'n v. Noble,* 693 A.2d 1084, 1097–98 (D.C.1997), *adopted on reh'g en banc,* 711 A.2d 85 (D.C.1998). *Cf., e.g., Pettibone Corp. v. United States,* 34 F.3d 536, 541 (7th Cir. 1994) (rejecting the IRS's interpretation of the IRC, noting that "[d]eference is not abdication, and it requires us to accept only those agency interpretations that are reasonable in light of the principles of construction courts normally employ") (quotations omitted); *Bond v. United States,* 872 F.2d 898, 901 (9th Cir.1989) (giving no deference to the IRS's interpretation of the federal tax code because "the government's interpretation in this situation strikes us as being neither consistent with legislative intent nor a reasonable construction of the statute").

■ Also, while typically "we focus on the 'settled rule that tax laws are to be strictly construed against the state and in favor of the taxpayer,' " *Acme Reporting Co., supra,* 530 A.2d at 712 (quoting 3A SUTHERLAND, STATUTES & STATUTORY CONSTRUCTION, § 66.01 (C. Sands, 4th ed.1986)), the Supreme Court has differentiated deductions from other sorts of tax provisions under "the 'familiar rule' that 'an income tax deduction is a matter of legislative grace and that the burden of clearly showing the right to the claimed deduction is on the taxpayer,' " *INDOPCO, Inc. v. Commissioner,* 503 U.S. 79, 84, 112 S.Ct. 1039, 117 L.Ed.2d 226 (1992) (quoting *Interstate Transit Lines v. Commissioner,* 319 U.S. 590, 593, 63 S.Ct. 1279, 87 L.Ed. 1607 (1943)) (other citations omitted). We do observe that the "deduction" before us is somewhat unusual in its quality not as one that grants special treatment for a particular type of expenditure but rather one that equalizes out income over a period of more than one year. *See supra* note 2.

■ Finally, we note that the language of the statute must control its application. *See Stevens v. ARCO Mgmt. of Washington, D.C., Inc.,* 751 A.2d 995, 998 (D.C.2000) (citing *Francis v. Recycling Solutions, Inc.,* 695 A.2d 63, 72 (D.C.1997)). "The literal words of a statute, however, . . . are 'to be read in the light of the purpose of the statute taken as a whole, and are to be given a sensible construction

and one that would not work an obvious injustice.'" *District of Columbia v. Gallagher*, 734 A.2d 1087, 1091 (D.C.1999) (quoting *Metzler v. Edwards*, 53 A.2d 42, 44 (D.C.1947)) (footnotes omitted) (citing *Tillinghast v. Tillinghast*, 58 App.D.C. 107, 109, 25 F.2d 531, 533 (1928)).

In sum, we recognize that appellants maintain the burden of proving entitlement to a deduction, while concurrently acknowledging that we cannot uphold the District's interpretation if it strains the language and legislative meaning of the statute read as a whole.

## III. Analysis

### A. Statutory Language

■ On its face, § 47–1803.3(a)(14) appears straightforward. Its relevant language, again, is as follows:

> In computing the net income of a corporation, an unincorporated business, or a financial institution, there shall be allowed a deduction for net operating losses, in the same manner as allowed under § 172 of the Internal Revenue Code of 1986 and as reported on any federal tax return for the same taxable period, except that no net operating losses may be carried back to any year ending before January 1, 1988.

Appellants urge us to read the provision as it seems naturally to flow; net operating loss deductions "shall be allowed" to "a corporation, an unincorporated business or a financial institution" and the rules for calculating and applying the deduction are governed by the section of the federal IRC later referenced in the same provision and consistent with amounts reported on federal tax returns. Indeed, there is no disagreement that the first portion of the section appears clearly to grant a deduction for "net operating losses" to all corporations, which would include Sovran, and to all unincorporated businesses, which

would include School Street. The District acknowledges this, but argues that the two following clauses ("in the same manner as allowed ..." and "as reported on ...") operate as what would be a drastic limitation on the actual availability of the deduction. The District's interpretation would, in effect, strip the deduction from all unincorporated businesses and disallow the deduction to virtually all corporations that file consolidated federal returns. We examine each of the two clauses in turn.

**1. "In the same manner as allowed under § 172"**

The District interprets the "as allowed under § 172" language as critically modifying, indeed essentially nullifying, the grant of the NOL deduction to "unincorporated business" in the first clause, because NOL deductions are not "allowed" to unincorporated entities under the federal scheme.[13] Appellants, on the other hand, argue that the reference to IRC § 172 merely sets forth general rules of computation, focusing on the language "in the same manner." Accordingly, the remaining portion of the clause—"as allowed under § 172"—does not effectively moot the deduction for unincorporated businesses, but rather relates to the calculation of the deduction. Considering both these arguments, we think the District's proffered reading of § 47–1803.3(a)(14), followed by the Superior Court, impermissibly distorts the most natural meaning of the provision and is inconsistent with a rational construction of the statute as a whole.

Appellants' interpretation has the benefit of harmonizing all portions of the statute by viewing the clause "in the same manner as allowed" as providing restrictions as to how, but not as to whom, the deduction is granted. *See M.M. & G., Inc. v. Jackson*, 612 A.2d 186, 192 (D.C.1992) ("We must read the statute as a whole and

---

**13.** The reason such deductions are not allowed under the IRC was elucidated earlier; under the federal rules, all partnerships as well as individually owned unincorporated businesses are pass-through vehicles, and as such there is no taxable income attributed to the business entity itself against which to apply the deduction.

in a way that harmonizes its provisions."). Appellants' reading also is consistent with this court's prior interpretation of references to other statutes as a "shorthand" for outlining procedures without requiring an absolute conformity that would render a portion of the primary statute inoperable. *See Floyd E. Davis Mortgage Corp. v. District of Columbia*, 455 A.2d 910, 912–13 (D.C.1983) (holding that use of the term "in the same manner as [another statute]" did not signify that the legislature simultaneously trumped the statute it was passing by incorporating another statute *in toto*, but rather merely incorporated the other provision to the extent it was harmonious). Thus, appellants have identified the applicable provision in the statute upon which they based their deductions, and demonstrated that they come within the terms of the provision. *See New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348 (1934).

One problem with regard to excluding an unincorporated business, such as School Street, from the NOL deduction based on the "as allowed" language is that § 172 itself does not in fact contain any provision that determines the entity which is entitled to take an NOL deduction. Rather, the section simply prescribes the procedures for determining and applying the deduction. Even more importantly, that reading would force us to assume that the inclusion of the words "unincorporated business" in § 47–1803.3(a)(14) was error or essentially meaningless. The only meaning that the District's interpretation gives to these words is purely hypothetical: should Congress some day treat an unincorporated business as a taxable entity for NOL purposes, the District's NOL allowance would follow suit automatically. But as between

this interpretation that gives vitality to words only upon a contingency that may never arise, and one that gives them actual, present meaning, we regard the latter as much more sensible, particularly when, as pointed out later,[14] the District's tax code has shunned a "moving conformity" whereby its provisions change meaning (let alone acquire life) depending on changes in the federal tax code. Thus, the District in its brief to the en banc court candidly acknowledges that its interpretation of subsection (14) effectively "uses the second half of the NOL provision to negate what the first half impliedly promises to unincorporated businesses."

■ Common rules of statutory construction require us to avoid conclusions that effectively read language out of a statute whenever a reasonable interpretation is available that can give meaning to each word in the statute. *See Thomas v. District of Columbia Dep't of Employment Servs.*, 547 A.2d 1034, 1037 (D.C.1988) ("A basic principle is that each provision of the statute should be construed so as to give effect to all of the statute's provisions, not rendering any provision superfluous."); *Tri–State Motor Corp. v. Standard Steel Car Co.*, 51 App.D.C. 109, 110, 276 F. 631, 632 (1921) ("it is the duty of the court … to harmonize and sustain, not destroy"). Additionally, we note that subsection (14) does not include excepted partnerships in the list of entities granted the particular deduction for NOLs, even though such partnerships are included in the broader deduction scheme.[15] This suggests that the inclusion of all separately taxed unincorporated businesses in the NOL deduction subsection was deliberate and meaningful—the necessary corollary to the

---

14. *See infra*, note 20.

15. As already quoted above, the section itemizing allowable deductions begins with the general provision: "The following deductions shall be allowed from gross income in computing net income of corporations, financial institutions, unincorporated businesses and partnerships." D.C.Code § 47–1808.3(a).

Section 47–1803.3(a)(14), on the other hand, indicates that the NOL deduction is available to only "a corporation, an unincorporated business, or a financial institution." A "partnership" for purposes of the District tax statute, if not an "unincorporated business," is a pass-through entity. *See* D.C.Code § 47–1808.6.

maxim *expressio unius est exclusio alterius*—just as it suggests that the exclusion of partnerships was likewise intentional. *See Gozlon–Peretz v. United States,* 498 U.S. 395, 404, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991) (" 'Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion' ") (quoting *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)).

The District has suggested that certain unusual forms of unincorporated business entities may be taxed as corporations under the federal law, but this is not demonstrated to be at best anything more than *de minimis.* Indeed, the District to date has not conclusively identified a single example, and the instructions accompanying the unincorporated business tax return unqualifiedly and specifically assert that "D.C. law does not permit the deduction of a net operating loss carry-forward or carry-back for unincorporated businesses."

The District also argues that at least the actual *losses* from unincorporated businesses, if any, may nevertheless pass on to individual owners, citing D.C.Code § 47–1803.3(d)(5)'s prohibition against allowing an unincorporated business's *deductions* to pass through to an individual. We note, however, that the degree under current practice to which any individual owner of an unincorporated business could effectively utilize the losses of the business for local tax purposes would necessarily depend on the vagaries of residence, other income and deductions, tax bracket, and other variables. Thus, the possible availability of the losses for the owners' individual returns does not act as a substitute for allowing the deduction to an unincorporated business as a separate tax entity. It seems at best anomalous to treat unincorporated businesses as separate taxable entities in years of profit but only as pass-through entities in years of loss. And insofar as corporations are concerned, a loss suffered by a corporation in Sovran's position filing federal consolidated returns would be totally unusable for purposes of District taxation under the District's interpretation.

Indeed, a further difficulty in the government's argument is suggested by an examination of the District's treatment of Sovran. The District does not dispute that where affiliated corporations take a consolidated NOL deduction attributable to an individual District entity on a federal consolidated return, the individual entity filing separately in the District may also take an NOL deduction under § 47–1803.3(a)(14).[16] But, in years where a corporation participates in filing a federal consolidated return, it is arguable that corporation does not take an NOL deduction "under § 172." Rather, the only NOL deduction available would be a consolidated NOL deduction under circumstances set forth by the Secretary of the Treasury at 26 C.F.R. § 1.1502–21.[17] The deduction, therefore, is technically taken "under 26 C.F.R. § 1.1502–21" and not "under § 172" of the IRC. Thus, the District's contention that the "as allowed" phrase should be given a formalistic reading that materially limits the applicability of NOL deductions to only those deductions which have been realized on the federal level via § 172 would be inconsistent to some extent with its own interpretation of the statute.

2. **"As reported on any federal tax return for the same taxable period."**

In advancing its argument, the District also relies on a narrow interpretation of the penultimate clause of the statute. The government asserts that appellants cannot

---

**16.** Apparently, this is the scenario that resulted in the acceptance of Sovran's NOL deduction for the 1988 tax year.

**17.** The regulations do, however, state that net operating losses (not NOL *deductions* ) "are determined under the principles of section 172 and this section." 26 C.F.R. § 1.1502–21(b)(1).

satisfy what it reads as the statutory precondition that NOL deductions must be "reported on any federal tax return for the same taxable period." Under the District's interpretation, not only must a NOL deduction be "reported" (which it construes as "taken") on a federal return, but such a deduction must also be taken for the same year in the federal system as the deduction is taken in the District.

NOL deductions themselves are not actually "taken" on federal partnership tax returns for entities like School Street, but rather the losses themselves are passed through to be utilized by the individual partners. For corporations, where an NOL is fully consumed as part of consolidated NOL deductions, as is the case with Sovran, no NOL deductions would be taken on the federal consolidated returns after the NOL had been fully utilized in the prior years. Thus, argues the District, in either case the NOL deduction has not been "reported on any federal tax return for the same taxable period" as required by the statute.

This is the District's best textual argument and it is not without some force. When read in its full context, however, "as reported" might be a referent to either "deduction" or "losses." While the structure of the clause is complex, the latter reading preserves a more harmonious interpretation of the statute in its entirety and fairly apportions NOL deductions to actual losses suffered by the separately taxed District entity.

Losses themselves are reported on the federal informational return filed by a partnership as well as the individual returns of the partners. Likewise, losses for the individual affiliates are reported in a federal consolidated return. Interpreting the reporting requirement during the "taxable period" as a necessity to match the amount of net operating loss carry-forwards and carry-backs relevant to a District return to those losses reported to the federal government gives full effect to all provisions of the statute while providing a fairly straightforward mechanism for policing the deduction. By contrast, reading the phrase "as reported on any federal tax return for the same taxable period" to apply to NOL deductions, rather than the losses themselves would distort the statute by effectively negating the treatment given to unincorporated businesses and individual corporations as distinct taxable entitles by the District's tax system.

Just as an interpretation of "as allowed" that effectively eliminates the express grant of the NOL deduction to "unincorporated businesses" is incongruent with logical statutory construction, so too is an interpretation of "as reported" that produces the same effect. Because partnerships cannot "report" NOL deductions, as such, the District's argument would eliminate the expressed application to unincorporated businesses—a proposition we find highly implausible, as previously stated. *See Thomas, supra,* 547 A.2d at 1037.

Additionally, when treated as terms of art, deductions typically are "allowed" or "taken," whereas losses, like income gains, are "reported." As § 172 makes clear, in the federal system NOL deductions are "allowed," not "reported." Throughout the District's tax code, these terms are used in accordance with this standard accounting meaning.[18] Ignoring the predominant use of the word "reported" in this isolated context, with the consequent erasure of the express term "unincorporated businesses" from the statute and distortion of the subsection as it applies to corporate entities, makes little sense. It is much more reasonable to interpret the last clause to mandate that all net operating losses utilized in the deductions have also been reflected on "any" federal tax return.

---

18. *See, e.g.,* D.C.Code § 47–1801.3 ("Such portion of such person's income ... shall be reported ..."); D.C.Code § 47–1803.3(a) ("The following deductions shall be allowed ..."); D.C.Code § 47–1804.3 ("The deductions and credits provided for in this chapter shall be taken ...").

In a similar fashion, the District argues that the term "taxable period" must be restricted to mean only a "taxable year," and that thus "reported" must apply to NOL deductions, because NOLs which form the basis of a deduction would not be reported in the same year as the deduction itself (but would rather be carried forward from a previous year, or carried back from a subsequent year). This argument, however, fails to acknowledge the use of the term "taxable period" in the tax law.

The IRC uses the term "taxable period" to mean both a taxable calendar year, as well as any length of time during which tax consequences arise. For example, IRC § 4941 imposes a tax on "each act of self-dealing between a disqualified person and a private foundation ... equal to 5 percent of the amount involved with respect to the act of self-dealing for *each year* (or part thereof) *in the taxable period.*" (emphasis added). Thus, the "taxable period" could constitute more than a single tax year. *See* IRC § 4941(e)(1) (defining "taxable period" as the period during which self-dealing occurs); IRC § 6621(c)(3)(B) (defining "taxable period" as any period to which an underpayment of taxes relate); *see also, e.g.,* IRC §§ 4942, 4944, 4945, 4951. As applied in this subsection of the D.C.Code, we see no persuasive basis for restricting the term to mean a single "taxable year," especially when the deduction statute, of which the NOL deduction is a part, explicitly uses the term "taxable year" in several instances, where that is meant, *see, e.g.,* D.C.Code §§ 47–1803.3(a)(1), (2), (3), (4), (6), (8), (13), (16), and (d)(5), and mentions "taxable period" only in the subsection in question. On the contrary, reading "taxable period" to mean the years during which an applicable NOL accrued is not only consistent with one

accepted meaning of the term in the tax law phraseology, but also fits logically with the interpretation that the term "reported" refers to net operating losses, and not NOL deductions. Indeed, when dealing with loss carry-forwards or loss carry-backs, more than one single year is necessarily contemplated. *See supra* note 2. Thus, in accord with a fair reading of its language, this clause of the statute only requires that net operating losses be reported on the federal level at some point within the relevant carry-back or carry-forward time frame.[19]

We make one final observation with respect to the overall construction of subsection (14), and that is with regard to the possible significance of its final clause, ("except that no net operating losses may be carried back to any year ending before January 1, 1988"), and its relation to the preceding portions of the subsection. The language of the subsection itself appears to distinguish specifically between those deductions that it grants and those that it disallows. The entire provision up to the "except" clause may readily be read as words of allowance of the deduction, to be fairly read in that light, with only the "except" clause being the significant clause of limitation.

Overall, then, the statute as a whole appears to provide the NOL deduction consistently across the board to all organizations taxed at the entity level, in accord with the District's decision to treat not only individual corporations but also unincorporated businesses as separate tax entities. The District's proposed treatment of NOL deductions as a single exception to that approach is, in our view, a reading too strained to be acceptable. While appellants' interpretation gives effect to each term of the subsection, the

---

19. We recognize that "taxable period" is defined elsewhere in the D.C.Code as "a taxable year or a portion of a taxable year." D.C.Code §§ 47–1807.1, –1808.2. While these definitions are doubtlessly reasonable in their own right, they do *not* apply to the subsection in question, nor do they compel only one

interpretation of the term throughout the code. Our analysis, then, merely reflects that because the term "taxable period" is not defined in the subsection at issue, the interpretation of its meaning must be reasonable in light of the subsection as a whole, as well as the overall taxation scheme.

District's interpretation, to borrow the phrases of appellants, (1) eliminates the term "unincorporated business," (2) substitutes a conditional "only if allowed under § 172" in place of "in the same manner as allowed under § 172," (3) alters "as reported" to "as allowed (or taken)," and (4) changes the term "taxable period" to read "taxable year."

## B. Legislative Intent and The Statutory Scheme

███ The legislative history of the provision in question is relevant both because " 'the obligation to pay taxes arises only by force of legislative action,' " *Acme Reporting Co., supra,* 530 A.2d at 712 (quoting 3A SUTHERLAND, *supra* at § 66.03), and because our deference to the agency's interpretation goes only so far as it is consistent with the legislative intent, *see Chung v. District of Columbia Dep't of Consumer and Regulatory Affairs,* 751 A.2d 989, 991 (D.C.2000). In that light, it is appellants' interpretation of the statute, and not the District's, which appears to reflect fairly the legislative intent, insofar as it can be divined from the available record.

As already mentioned, the provision allowing deductions for NOLs was included in an extensive 1987 enactment in an effort to loosely conform the District's tax code to the IRC while simultaneously ensuring that District income taxes would not increase overall. The Committee report on the amendment made clear that conformity to the federal system was not an overarching goal to be gained at the detriment of the local taxpayer: "Bill 7–183 ... continues the District's limited conformity with the federal income tax while returning to the taxpayers the revenue gain which would otherwise accrue to the District as a result of such conformity." RE-PORT OF THE COUNCIL OF THE DISTRICT OF COLUMBIA COMMITTEE ON FINANCE AND REVE-

NUE ON BILL 7–183, at 1 (May 14, 1987) ("Committee Report"). Specifically, the Committee contemplated specific deductions to decrease the potential tax burden, noting that "[c]onformity will also be maintained in the franchise tax area, with the impact of such conformity being reduced by [*inter alia* ] ... allowing the use of a net operating loss deduction." *Id.* at 21. Otherwise put, the legislative history makes clear that one key element of the 1987 enactment was to expand available deductions under District law, with no indication of an intent to be grudging in that regard.

Generally throughout the Report, the Committee treats the "franchise tax" as a single concept, without differentiating between the tax on corporations and that on unincorporated businesses. Most importantly, when discussing the NOL deduction, the Committee uses the generic "franchise tax" nomenclature to reference its broad applicability. Where the Council intended a distinction between the franchise tax on unincorporated businesses and on corporations, the Report makes that intention clear. *See* Committee Report, *supra,* at 21 ("The treatment of Subchapter S Corporations will be changed. They will no longer be taxed under the District's unincorporated business franchise tax, but rather will be taxed under the District's corporate franchise tax."). Thus, the Report suggests that the effect of the NOL deduction amendment would be the same in all "franchise tax" instances, whether unincorporated or otherwise.

Furthermore, there is no indication that the Council considered that the NOL deduction would be unavailable *per se* to any of those entities expressly listed in the amendment, nor did the legislature express a distinction between the application of the deduction to those entities that participated in filing a federal consolidated return, and those that did not.[20] We also

---

**20.** The Committee Report also negates the notion that the amendment may have been meant as legislation that would automatically

track federal law-that is, that the statute in effect means only that when and if unincorporated businesses were able to take an NOL

can glean from the general prohibition against consolidated returns, *see* D.C.Code § 47–1805.2(5)(B); 9 DCMR § 109.1, that income, losses and deductions of corporations outside the District's jurisdiction were not intended to have a direct effect on the tax liability of corporations within the District. *See Floyd E. Davis Mortgage Corp., supra,* 455 A.2d at 911 ("a statute is to be construed in the context of the entire legislative scheme"). In the same vein, the relevant statutes and regulations reiterate that generally the District expects to treat incorporated and unincorporated businesses alike, including the extent to which unincorporated businesses receive deductions.

Under the [District of Columbia income and franchise tax statutes], the net income of an unincorporated business is computed in practically the same manner as the net income of a corporation. Accordingly, *an unincorporated business is generally entitled to allowable deductions from gross income to the same extent that would be allowable if the business were incorporated.* 9 DCMR § 119.2 (emphasis added); *see also, e.g.,* D.C.Code § 5–1404(a) (1994) ("Any incorporated or unincorporated business entity ... shall be qualified for tax incentives if ..."); 9 DCMR § 117.1 ("The design of the unincorporated business tax ... is to impose a tax ... as though the business were incorporated....").[21]

·The District points out that business interests made a subsequent unsuccessful attempt to amend the statute in 1994 to make NOL deductions specifically applicable to unincorporated businesses and S-corporations. From this fact, the District infers that the original statute was not meant to provide unincorporated businesses with NOL deductions. Basing an interpretation of the statute on evidence of a proposed amendment, however, is fraught with difficulty. *See United States v. Wise,* 370 U.S. 405, 411, 82 S.Ct. 1354, 8 L.Ed.2d 590 (1962) ("Logically, several equally tenable inferences could be drawn from the failure of the Congress to adopt an amendment in the light of the interpretation placed upon the existing law by some of its members, including the inference that the existing legislation already incorporated the offered change"). Even if the legislature intended to rebuff the proffered amendment, "we have heeded the admonition of the Supreme Court which stated that '[t]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one.'" *Needle v. Hoyte,* 644 A.2d 1369, 1372 (D.C. 1994) (quoting *United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 4 L.Ed.2d 334 (1960)). In particular, we note "the hazard of attempting to impute meaning to legislative inaction unless it is absolutely clear the Council can be said to have known about an issue, cared about it, and some-

deduction at the federal level, so too would those businesses be able to take the same deduction at the District level, but not until that time. *See* Committee Report, *supra,* at 18 (detailing the District's historic avoidance of "adopt[ing] a moving conformity whereby subsequent Federal income tax law changes would automatically be adopted by the District").

21. The District's belated reliance, proffered for the first time on rehearing, on an OTR memorandum sent to its auditors, apparently produced contemporaneously with the relevant amendment in 1988, which sets forth the District's present positions, does not affect our decision. *Regardless* of whether this internal document actually represents an au-

thoritative interpretation by the agency (which we doubt), because the interpretation is inconsistent with the apparent legislative intent and the structure of the statute, we cannot treat it as decisive. *See Dankman, supra,* 443 A.2d at 514–15 (agency's interpretation that "restricted rather than implemented the basic purpose of the [relevant act]" was afforded no deference). Moreover, the mere fact that litigation in the present cases has taken several years will not *ipso facto* successfully create a "longstanding" interpretation by the District. Both appellants challenged the District's interpretation of the subsection soon after its enactment and initial application.

how dealt with it." *United States Parole Comm'n, supra,* 693 A.2d at 1103.

■ The District also argues that the primary purpose of the legislation was conformity with the federal scheme, and thus the section under consideration should be held in the tightest degree of congruity with the IRC. It is true in our jurisdiction that, "were we in doubt as to the meaning of this tax statute, we would endeavor to conform its interpretation to comparable provisions of the federal Internal Revenue Code." *District of Columbia v. National Bank of Washington,* 431 A.2d 1, 4 (D.C. 1981). However, resort to the IRC for the position that unincorporated businesses do not receive NOL deductions in the District is illogical in light of the continued fundamental difference between the federal and District tax law with respect to the separate tax treatment of unincorporated businesses. The same argument is likewise unpersuasive with regard to the District's refusal to allow corporate NOL deductions where, despite the existence of actual net operating losses, no NOL deduction has been taken on a federal return, because the District's self-imposed practice of requiring individual (as opposed to consolidated) returns, itself, is incongruent with federal law.

Rigid uniformity between the District's franchise tax structure and the federal tax structure was neither a stated nor an implied goal of the Council, nor could it have been attainable given the significant differences in the taxation of businesses in the District.[22] Rather, the Committee Report admits only a goal of "limited conformity with the federal income tax ... without a District income tax increase," and outlines the District's historic caution against blindly tracking the federal tax structure due to the need to consider the numerous distinctions between federal and District tax law. Committee Report, *supra,* at 18–19; *see also supra* note 20. Throughout its dis-

cussion of the Act, the Committee recognizes that the District's conformity to federal law is limited. *See, e.g.,* Committee Report, *supra* at 4 ("the District currently does not conform with federal law as it does not subject individuals to taxation on their receipt of Social Security benefits"). More importantly, where total conformity with the federal law was intended, the Committee stated so succinctly. *See, e.g., id.* at 5–6 ("Section 2(c)(8) [of the proposed law] amends ... D.C.Code, sec. 47–1803.3(a)(4)(A) and (B) ... so that District law conforms with federal law regarding the deductibility of casualty losses by removing the $100 threshold for deductibility of personal casualty losses.") Tellingly, when discussing the proposed NOL deduction provision, the Committee made no specific reference to strict conformity to the federal tax law. *See id.* at 7.

The limited nature of the conformity intended by the Council is further evidenced by the overall structural differences between federal and District taxation of corporations filing a federal consolidated return. As explained earlier, an individual corporation's net operating losses may be used as a basis for a consolidated NOL deduction on a consolidated federal return. In this manner, however, an individual corporation's NOL could be consumed by offsets to income realized by other corporations outside the District, rather than to deductions from its own positive past or future income. Under the federal consolidated scheme this result makes sense because income, losses and deductions are all aggregated with respect to the filing group as a whole, and the group as a whole is subject to federal taxation on a consolidated basis-hence the appropriate nomenclature. However in the District, where not all members of the consolidated return are subject to the District franchise tax, an

22. The District's implementing regulations themselves point to the preservation of unincorporated businesses as taxable entities as a

significant difference between District and federal tax law. *See* 9 DCMR § 117.1.

individual corporation must file separately. As a result the income, losses and deductions of the other affiliated corporations, which helped form the consolidated return on the federal level, fall by the wayside. Within this context, it seems anomalous to treat NOL deductions as an exception to the District's tax structure, whereby those specific deductions alone would be considered on a consolidated basis (and thus affected by income from outside the District), while income, losses and other deductions are considered only with respect to the individual taxpaying entity subject to District tax.

As previously noted, under that reading, an NOL of a corporation taxed by the District that is used to offset the income of a corporation outside the District on a federal consolidated return would become nonexistent for purposes of the local tax. Adopting the District's argument that the statute intended to link strictly the local deduction to a comparable federal deduction would create a system wherein District corporations participating in a federal consolidated return might well be unable to take advantage of their actual NOLs even though such losses at the federal level were fully utilized. As an "exception," however, this reading substantially weakens the District's argument for strict uniformity to the IRC and appears inexplicable in light of the general structure of the statute. Moreover, the District's argument that choosing to file a federal consolidated return may act as an election that

properly bars taking the NOL deduction in the District finds no support in either the legislative history or the statutory scheme of the franchise tax.[23] In fact, this practice would contravene the implication of the allocation provision of D.C.Code § 47–1803.3(a)(10), which authorizes deductions "only for and *to the extent* that they are connected with income arising from sources within the District . . . ." (emphasis added).

Finally, the District expresses concern about the possibility of a double taxpayer benefit from the NOL deduction if allowed to unincorporated businesses. The District suggests that the deduction can already be utilized on the personal tax returns of businesses' owners, perhaps in prior years, because, as already noted, losses (unlike gains) are in current practice passed through to them. We doubt that double benefit is an inevitability. Whatever the current practice of the OTR,[24] both the statute and the regulations appear to provide mechanisms to prevent duplicative use of the same deduction or can be amended to do so. As explained earlier, D.C.Code § 47–1803.2(a)(2)(D) prevents double taxation of unincorporated business income in the same year. If § 1803.2(a)(2)(D)'s reference to "share" is read to include both positive and negative income of the unincorporated business, losses will never be passed through to individual owners. It may be argued that passage of § 1803.3(a)(14) implicitly suggests such a reading. Further, 9 DCMR

**23.** Despite the District's argument to the contrary, no similar "choices" appear to exist. The District relies on the scenario where a husband and wife who choose to file separately lose the option of taking the standard deduction on their District return if one of them itemizes on their federal return. However, unlike the franchise tax, upon which our case is based, the individual income tax of the district is not so different from the federal structure as to render such choices incongruent with the overall statutory scheme. Most importantly, while a husband and wife, for the most part, retain the option of filing separately or jointly in the District, only a narrowly defined group of corporations may

ever file a consolidated return in the District. In any event, Sovran's original "choice" to participate in filing a consolidated federal return was made prior to the enactment of the NOL deduction subsection.

**24.** The District appears to have historically construed the entirety of § 47–1803.2(a) (1996) and § 47–1803.3(b) (1996) as allowing the passage of losses onto individual owners for their tax benefit. Nothing in the code states this explicitly; the District apparently relies on general references to the IRC in allowing this pass-through of losses.

§ 119.4 states unequivocally: "No deduction which is allowed or allowable from the gross income of an unincorporated business ... shall be allowed as a deduction in the individual return of any person entitled to share in the net income of the business." By including the term "allowable," the regulation may well anticipate and disallow use in one year of a deduction for an owner that will become available to the business in the future. The regulation and statute together should be adequate to prevent double deductions. But we do not rule here definitively on these or any other questions relating to the individual tax returns of the owners. Our focus in this respect is on the taxation of the unincorporated business, which the District has chosen to treat as a separate taxable entity.

As a final support for its argument, the District relies on the "administrative convenience" of applying the NOL deduction provision as it has urged. *See Kelly v. United States,* 924 F.2d 355, 361 (1st Cir. 1991) ("an interpretation [of a statute or regulation] that would overtax enforcement machinery is disfavored as unreasonable"). While certainly a meritorious basis for defending its interpretation, the District has not demonstrated here that any strain on the "enforcement machinery" is of such an overriding consideration that it alone can trump the natural overall reading of the statute in question within the existing tax structure. *See Stewart Dry Goods Co. v. Lewis,* 294 U.S. 550, 560, 55 S.Ct. 525, 79 L.Ed. 1054 (1935) ("Gross inequalities may not be ignored for the sake of ease of collection.").

## IV. Conclusion

In sum, "the Tax Court was required to apply the law in effect at the time its decision was rendered and to base its judgment upon the provisions of that law interpreted in accordance with its purpose and spirit, rather than upon conclusions reached after 'subtle and involved reasoning.'" *District of Columbia v. Linda Pollin Mem'l Hous. Corp.,* 313 A.2d 579, 584 (D.C.1973) (internal citation omitted). In light of the language of the provision, the apparent intent of the drafters, and the structure of the District tax code as a whole, we have difficulty in discerning support for the District's interpretation based on a coherent tax policy. Arguments stemming from "federal conformity" or "administrative convenience" have not been shown to suffice. "Since we are interpreting and applying a statute which is clear on its face, and since appellants have not persuaded us that the language of the statute admits of more than its natural meaning, we are obliged to apply [it] as written." *Kleiboemer v. District of Columbia,* 458 A.2d 731, 737 (D.C.1983) (citing *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917) and 2A SUTHERLAND, *supra* at § 46.01), *cert. denied,* 465 U.S. 1024, 104 S.Ct. 1279 (1984).

The decisions of the Superior Court are reversed and the cases are remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

WAGNER, Chief Judge, dissenting:

The District of Columbia tax provision under consideration allows corporations, unincorporated businesses or financial institutions to take as deductions in computing net income, net operating losses in prior or subsequent years "in the same manner as allowed under § 172 of the Internal Revenue Code of 1986 and as reported on any federal tax return for the same taxable period, except that no net operating losses may be carried back to any year ending before January 1, 1988." D.C.Code § 47–1803.3(a)(14). The Office of Tax and Revenue (OTR) has consistently interpreted this provision to mean that taxpayers can take the deduction on their D.C. tax returns only if they take the same net operating loss deductions on their federal tax returns for the same period. Assuming some ambiguity in this statutory provision, our task on appeal is to deter-

mine whether OTR's interpretation of its governing statute is reasonable, not whether it is the best interpretation. *See Atlantic Mutual Ins. Co. v. Commissioner,* 523 U.S. 382, 389, 118 S.Ct. 1413, 140 L.Ed.2d 542 (1998) (citing *Cottage Savings Ass'n v. Commissioner,* 499 U.S. 554, 560, 111 S.Ct. 1503 (1991)). In my opinion, OTR's interpretation is reasonable, and this court should defer to it. *See id.* at 391, 118 S.Ct. 1413; *see also District of Columbia v. Casino Assocs.,* 684 A.2d 322, 325 (D.C.1996). OTR's interpretation is consistent with the statutory language, and it facilitates administration of the statute by limiting deductions for net operating losses to those taken on the federal tax return. That a taxpayer, such as Sovran, may lose the advantage of the full deduction on its D.C. return for a particular year because of the tax treatment it has elected to use on its federal return does not render OTR's interpretation irrational, unreasonable or unjust.[25] Similarly, that the legislators may not have recognized that partnerships, although unincorporated businesses, would not qualify for net operating loss deductions in the District at the entity level because such deductions cannot be taken on the federal level does not render OTR's interpretation unreasonable. Such losses are passed through to the individual partners. Under OTR's interpretation of the net operating loss deduction, net operating losses of these unincorporated businesses can be used only once, by the individual partner. The alternative interpretation is not superior to the agency's interpretation. Finally, in enacting the statute, while perhaps not an overarching concern, the legislature expressed its intent to continue "limited conformity" with the federal income tax laws.[26] Such a limitation is expressed in the statute itself which establishes a different carry back period, while otherwise providing for conforming deductions in the same manner as allowed under a specific section of the Internal Revenue Code and as reported on any federal tax return for the same taxable period. Even if not superior to other possible interpretations, OTR's interpretation is reasonable, and under our standard of review, should be accepted. *See Atlantic Mutual,* 523 U.S. at 389, 391, 118 S.Ct. 1413; *Hutchinson v. District of Columbia,* 710 A.2d 227, 234 (D.C.1998). For these reasons, I respectfully dissent from the opinion of the court.

---

**25.** In this case, Sovran had losses which it chose to use to offset income for affiliated groups on its federal return over a lengthy carry back period, leaving it no losses to take on its federal or D.C. returns for the years in question in this appeal. It appears that Sovran had a net operating loss deduction for 1988 for federal tax purposes which therefore, should have been available as a deduction on its 1988 D.C. return.

**26.** REPORT OF THE COUNCIL OF THE DISTRICT OF COLUMBIA COMMITTEE ON FINANCE AND REVENUE ON BILL 7–183, at 1 (May 14, 1987).