Samuel PASCHALL, Petitioner,

v.

DISTRICT OF COLUMBIA DE-
PARTMENT OF HEALTH,
Respondent,

The Washington Home, Intervenor.

No. 03–AA–1347.

District of Columbia Court of Appeals.

Argued Feb. 2, 2005.

Decided April 7, 2005.

Rhonda K. Dahlman, for Legal Counsel for the Elderly, with whom Zita Dresner, Rockville, Md, for D.C. Long-Term Care Ombudsman Program, was on the brief, was on the brief, for petitioner. James T. Sugarman, Charleston, WV, for Legal Counsel for the Elderly, entered an appearance for petitioner.

Mary T. Connelly, Assistant Attorney General, with whom Robert J. Spagnoletti, Attorney General for the District of Columbia, and Edward E. Schwab, Deputy Attorney General, were on the brief, for respondent.

Marie C. Infante, Washington, DC, with whom Karen S. Lovatch, was on the brief, for intervenor.

Before WAGNER, Chief Judge, and FARRELL and RUIZ, Associate Judges.

FARRELL, Associate Judge:

Petitioner Samuel Paschall (hereafter Paschall or petitioner) was discharged as a patient from The Washington Home (TWH or the Home) upon written notice that the discharge was necessary to protect him or other residents of the facility from injury. An Administrative Law Judge (ALJ) in the Office of Adjudication and Hearings of the District of Columbia Department of Health (DOH) subsequently ruled that the discharge notice failed to comply with federal and District of Columbia law. On a motion to clarify and reconsider filed by petitioner, however, the ALJ ruled further that he lacked authority to order Paschall's readmission to TWH—that such an order could be issued only by a judge of the Superior Court upon request for equitable relief made in that court. On this petition for review, the main issue we decide is whether this ruling by the ALJ was correct. We hold that it was not, and so we reverse the denial of the motion to clarify and reconsider, and remand for further proceedings.

## I.

TWH is a Medicaid- and Medicare-certified nursing facility in the District of Columbia. Paschall, then 72 years old, was admitted to the Home in June of 2003 as a Medicaid patient, residing in the Alzheimer's Unit. Progress notes from TWH's doctors reveal that his "medical condition and symptoms" were being closely monitored because "he was becoming increasingly difficult to handle." On October 6, 2003, Paschall was transferred to Walter Reed Army Hospital after complaining of abdominal pain. On October 20, while he was at Walter Reed, the Home issued a written Advance Notice of Discharge informing him and his daughter (his legal representative) that "discharge is essential to safeguard you [Paschall] or other residents from physical or emotional injury," which "is documented in your clinical record by a physician."

On October 28, through counsel, Paschall submitted a motion to DOH asking it to quash the notice of discharge because it was facially deficient on multiple grounds, including that TWH had failed to provide him with the advance 30 days notice for a transfer or discharge required by federal and local law or an explanation of why such notice was excused in the circumstances; and that the notice of discharge failed to provide the location to which he would be moved, as also required by law. In the event the motion to quash was denied, Paschall further requested a hearing pursuant to D.C.Code § 44–1003.03(b) (2001) at which to challenge the basis for the discharge. TWH responded to the motion.

On November 7, 2003, while Paschall continued to be treated at Walter Reed, ALJ Poindexter ruled that the Advance Notice had failed to comply with controlling federal regulations. The ALJ assumed, without deciding, "that sufficiently emergent conditions existed in [Paschall's] case that would warrant an exception to the usual, 30–day advance notice timing requirement set forth in 42 C.F.R. § 483.12(a)(5)," but ruled that this did not excuse compliance with "the substantive components of the notice" requirement, and specifically that the notice given Paschall had failed to provide the location to which he was to be discharged, as required by 42 C.F.R. §§ 483.12(a)(4)(iii) and 483.12(a)(6)(iii). The ALJ accordingly ruled that TWH could not discharge Paschall based upon that notice, but was free to issue a new one in compliance with the law, whereupon Paschall could again "request[ ] a hearing to challenge any such attempt to discharge."

A week later, Paschall's attorney moved for "clarification and reconsideration" of the November 7 order, asserting that despite it he had not been readmitted to TWH "because his bed was no longer available and no other Medicaid long-term beds were open." Although Paschall had since been relocated from Walter Reed to a nursing facility in Maryland, he requested an order requiring TWH to inform him in writing of his "right to return to the first such bed that becomes available" and to place him "at the top of its waiting list for a Medicaid long-term care bed." Following receipt of TWH's response, the ALJ issued an order stating that he had "no reason to doubt … [TWH's] representation that, upon issuance of the Final Order [invalidating the discharge notice], affirmative initial efforts were promptly made to readmit [Paschall] to the Facility, despite there being no long-term care beds available," and that he could also "appreciate [Paschall's] uncertainty and, perhaps, anxiety as to those inchoate efforts on the part of [TWH] and, as a result, his representative's decision that another facility in Maryland might be the best care alterna-

tive—at least for the short term." The ALJ concluded, however:

> That being said, this administrative court is simply without the jurisdictional authority to compel any further action in this matter. The Act specifically reserves equity jurisdiction in such cases to the Superior Court of the District of Columbia. D.C. Official Code §§ 44–1001.01(4) and 44–1004.01. As such, to the extent that the Superior Court determines that [TWH's] efforts to readmit [Paschall] have been inadequate as a matter of law, and that specific actions are required on the part of [TWH] going forward, the Superior Court has been expressly empowered by the D.C. Council to provide such relief to [Paschall]. This administrative court has not been so empowered and, as a result, cannot grant the equitable relief requested by [Paschall]. [Footnotes omitted.]

In a word, as DOH recognizes in its brief to this court, the ALJ concluded "that he lacked authority to direct Mr. Paschall's readmission to the Home" (Br. for DOH at 6).

Paschall filed this petition for review of that decision pursuant to D.C.Code §§ 44–1003.13 and 2–510 (2001).[1]

## II.

TWH filed no cross-petition for review of the ALJ's November 7, 2003 decision invalidating the discharge notice. It nevertheless argues (in a footnote of its brief)

that the ALJ's reliance on 42 C.F.R. § 483.12(b) to invalidate the notice was improper because it was "contrary to Congressional intent and existing precedent" (Br. for TWH at 7 n. 6). Specifically, the Home argues that Title XIX of the Social Security Act, the federal statute on which 42 C.F.R. § 483.12(b) is based, does not grant individuals a private right of action enforceable against private nursing homes, citing, inter alia, Nichols v. St. Luke Ctr. of Hyde Park, 800 F.Supp. 1564, 1568 (S.D.Ohio 1992). That argument is unavailing here even if we assume, without deciding, that TWH has not waived it by not petitioning for review of the November 7 order. Title 22 DCMR § 3200.1 (2004) provides that "[e]ach nursing facility [in the District] shall comply with ... the requirements of 42 C.F.R. Part 483, Subpart B, Sections 483.1 to 483.75; Subpart D, Sections 483.150 to 483.158; and Subpart E, Section 483.200 to 483.206, all of which shall constitute licensing standards for nursing facilities in the District of Columbia." This rule, adopted in 2001 pursuant to the Mayor's authority under D.C.Code § 44–504(a), thus expressly incorporates the discharge provisions of 42 C.F.R. Part 483, Subpart B (including § 483.12(b)) into District of Columbia law, made enforceable by the discharge protections of D.C.Code § 44–1001.01 et seq. (the Nursing Home and Community Residence Facility Residents' Protection Act of 1985). So whether or not federal law would independently allow petitioner to challenge his

---

1. As a separate ground for the petition, Paschall challenges the ALJ's ruling that it was unnecessary for him to reach an alternative basis for relief Paschall had advanced, viz., a violation by TWH of the federal regulation requiring nursing facilities to advise temporarily hospitalized patients of the facility's bed-hold policy and their right to return to the first available bed after the bed-hold expires. See 42 C.F.R. § 483.12(b). The relief Paschall seeks for that (assumed) violation,

however, is functionally the same as the relief he sought for the violation of 42 C.F.R. §§ 483.12(a)(4)(iii) and 483.12(a)(6)(iii) found by the ALJ: a decision affirming the ALJ's authority to order his readmission to TWH. Like the ALJ in this respect, "[w]e decide only what is necessary" in the case before us, Old Dominion Copper Mining & Smelting Co. v. Lewisohn, 210 U.S. 206, 216, 28 S.Ct. 634, 52 L.Ed. 1025 (1908) (Holmes, J.), and thus do not reach his additional contention.

discharge by TWH administratively is an issue we need not decide.

■ Turning to whether the ALJ correctly ruled that only a Superior Court judge can order the remedy of readmission, we are met with DOH's threshold contention that the issue is moot because all that petitioner sought from the ALJ was a declaration of the "right" to be readmitted to TWH "at some indefinite point in the future" (Br. for DOH at 11), and even now he does not express a desire to be readmitted. In response, Paschall does not really dispute that the issue may not be a "live" one as to him; instead he points, without contradiction, to a succession of orders that DOH has issued in the wake of the ALJ's ruling in this case that continue to assert the lack of authority of an ALJ to order readmission.[2] Although it is possible, as DOH rejoins, that one or more of these orders will come before us in the case of a discharged resident actively seeking readmission to a nursing facility, we conclude that the merits of the issue may and should be decided now. We have chosen before "to rule in spite of valid mootness concerns" in cases that "involve[ ] overarching issues important to the resolution of an entire class of future [cases]." *In re Barlow,* 634 A.2d 1246, 1249 (D.C.1993) (quoting *McClain v. United States,* 601 A.2d 80, 82 (D.C.1992)). The issue of the authority of a DOH administrative law judge to order the important remedy of readmission is such an issue, and we proceed to consider it.

■ The only pertinent readmission authority the ALJ could find in the Nursing Home and Community Residence Facility Residents' Protection Act, *supra* (hereaf-

ter "the Act"), was D.C.Code § 44–1004.01, which authorizes a Superior Court judge to grant injunctive and similar equitable relief for violations of the Act and applicable regulations. Petitioner argues, with considerable force, as will be seen, that this is too parsimonious a reading of the statute as a whole. Among the protections it confers, the Act gives residents of nursing homes the right to an administrative hearing to challenge an involuntary discharge or transfer from the facility, as well as a right of action to enforce that and other protections in court once administrative remedies have been exhausted. Substantively, the Act limits a facility's authority to involuntarily discharge, transfer, or relocate a resident largely to situations where the move is medically or administratively "essential." D.C.Code § 44–1003.01. Procedurally, except where "the resident's urgent medical needs" or "other compelling circumstances" dictate, § 44–1003.02(b)(1) & (2), it requires a facility to give the resident advance written notice of the discharge or transfer stating, among other things, the reasons for the action and the proposed effective date. Section 44–1003.02(d)(1)-(5). Most pertinent here, a resident's timely request for a hearing at which to challenge the proposed action "shall *stay* the discharge, transfer, or relocation unless a condition set forth in § 44–1003.02(b)(1) and (2) [*i.e.,* an emergency or other compelling circumstance] develops in the interim." Section 44–1003.03(a)(3) (emphasis added). If, after the hearing, the ALJ finds that the facility has proven (by clear and convincing evidence) the asserted grounds for the discharge, the action still may not take place until specified time periods have elapsed. Section 44–

---

**2.** "Even though Dr. Paschall, currently resides in another nursing home," petitioner's brief states, "his case is not moot. Constance Green, Clarence Johnson [the individuals in the cited orders], and future residents trans-

ferred or discharged from long-term care facilities in violation of notice requirements will continue to lose their homes without due process if the decision in this case is allowed to stand" (Reply Br. for Intervenor at 14).

1003.03(c). Not stated, but clearly implicit in the Act, is that if the facility does not meet its burden of proof at the hearing, the discharge, transfer, or relocation is prohibited.

As is apparent, the requirement of advance notice of a discharge in all but emergency situations is integral to the statutory scheme, mainly because it makes possible—in fact mandatory—a stay of the discharge upon timely request for a hearing. But in the present case, as it happened, a stay was not an available alternative. The ALJ found that Paschall "had effectively been discharged" from TWH without prior notice and a hearing when he was transferred to Walter Reed Hospital and the Home, on October 20, declared its unwillingness to receive him back because of the danger it believed he posed to himself and others. As of that date, in the ALJ's words, "Walter Reed became the *de facto* alternative placement" for Paschall. It is unreasonable, petitioner argues, to read the Act so as to deny the ALJ power to restore a *status quo ante*—Paschall's residency in the Home—which the stay provision itself would have preserved except for his discharge without a hearing on alleged emergency grounds he contends TWH would be unable to prove. Petitioner points also to the complementary provisions of the Act concerning a discharge ordered by the Mayor himself (through DOH), specifically § 44–1003.09(c) which provides that "[i]f as a result of a hearing held under this section a resident *is to be returned to a facility*, the Mayor shall facilitate that return if [any among named individuals] requests assistance" (emphasis added). No reason has been offered, petitioner argues, why the Act does not similarly contemplate that a resident "is to be returned to [the] facility"—without the additional burden of seeking a court order—when the facility itself has proposed his discharge unlawfully.

■ In its brief, DOH appears to see considerable merit in these arguments, because it limits itself to asserting that petitioner has shown no basis in the Act for an ALJ to order readmission "based solely on [having granted] a motion to quash a defective notice of discharge," rather than on a determination after "a hearing on the merits of the discharge ... that the notice was defective *and* that the discharge was prohibited for other reasons" (Br. for DOH at 10; emphasis by DOH); *see also id.* at 10–11 ("Mr. Paschall's arguments conflate the remedies available for an illegal discharge with the remedies available for a defective notice of discharge."). DOH thus appears to be of the view that the ALJ can order readmission after a hearing, but not before. Yet if the Act authorizes the ALJ to order readmission after a hearing and a finding of no lawful ground for discharge, it makes little sense, petitioner cogently argues, to read it as denying him that power where he invalidates the discharge at the threshold because of a failure to provide legally sufficient notice. Neither DOH nor TWH suggests that the defective notice the ALJ found in this case was merely "technical" or excusable, so that the Home was not obligated to begin the discharge process again.[3]

---

**3.** Thus, we do not understand petitioner to argue, nor would we hold, that *any* defect in the required notice entitles a patient who has been discharged to readmission without further inquiry. Petitioner's argument here (disputed by TWH) is that the failure to give notice to the location to which he was to be discharged reflected a basic failure of the Home to evaluate, after taking into account petitioner's views, whether his needs could appropriately be accommodated at the facility—rather than in a different environment—while insuring the safety of other residents. *See* 42 C.F.R. § 483.12(a)(2). In any event, as we explain later in the text, whether the ALJ *must* exercise his discretion in favor or order-

■ All told, petitioner has made a strong case for concluding that the Act implicitly authorizes an ALJ to order the remedy of readmission. Ultimately, however, we need not decide whether the statute by itself provides that remedy. As pointed out earlier, District law incorporates the requirements of 42 C.F.R. Part 483, including Subpart E, §§ 483.200 to 483.206. Subpart E in turn implements federal statutory law requiring States (including the District of Columbia) to make available to individuals discharged from Medicare- and Medicaid-participating facilities an appeals process that complies with federal guidelines. *See* 42 C.F.R. § 483.200. Under 42 C.F.R. § 483.204, the State "must provide an appeals system that meets the requirements of part 431 subpart E of this chapter."[4] That subpart "provide[s] an appeal process for any person who ... [i]s subject to a proposed transfer or discharge from a nursing facility," § 431.200(c)(1),[5] by requiring the relevant "Medicaid agency" to maintain a "hearing system" that provides, among other things, "for admission *or readmission* of an individual to the facility if ...

(a) [t]he hearing decision is favorable to the [Medicaid] applicant or recipient; or (b) [t]he agency decides in the applicant's or recipient's favor *before the hearing.*" 42 C.F.R. §§ 431.205, -.246 (emphasis added). These regulations, in our view, leave no further room for doubt that an ALJ may properly order readmission of a Medicaid resident in whose favor he has found either after a hearing or, as in this case, before it upon determining that the discharge notice was unlawful.[6]

■ To hold, as we do, that the ALJ possesses such authority is not to say that he must exercise it or that to do so will be appropriate in all cases, including this one. See note 3, *supra.* Here there remains the unresolved question, first of all, of whether Paschall continues to seek readmission to TWH. There is also the legal question, raised by TWH in its brief, of whether he relinquished or waived his right to readmission when, as the Home contends, he rejected efforts TWH made to facilitate his readmission following the ALJ's November 7 order invalidating the

---

ing petitioner's admission will depend on, among other things, his evaluation after a hearing of the grounds on which the Home discharged Paschall.

DOH makes an argument that Paschall never properly applied for a hearing at which to challenge the grounds for discharge, *see* D.C.Code § 44–1003.03(a)(1), but limited himself instead to a "motion to quash" the defective notice. The precise language in which petitioner cast his request for relief is not decisive, however, given that he expressly asked in the alternative—*i.e.*, if his motion to quash were rejected—for a hearing on the sufficiency of the grounds offered to support the discharge.

4. *See also* 42 C.F.R. § 431.202 ("A state plan must provide that the requirements of §§ 431.205 through 431.246 of this subpart are met.").

5. "Discharge" is defined as "movement from an entity that participates in Medicare as a

skilled nursing facility, a Medicare certified distinct part, an entity that participates in Medicaid as a nursing facility, or a Medicaid certified distinct part to a noninstitutional setting when the discharging facility ceases to be legally responsible for the care of the resident." 42 C.F.R. § 483.202.

6. Recognizing this authority in the ALJ does not, of course, deprive D.C.Code § 44–1004.01 of its importance. A remedy ordered is not in all cases a remedy accomplished. In the present context, injunctive relief under that section would remain available if a facility were to deny or delay readmission despite an order of the ALJ. In that respect, the statute works in tandem with D.C.Code § 2–1831.09(e), which permits the Superior Court to hold a person in contempt "for refusal to comply with an order ... issued by an Administrative Law Judge."

notice. No factual findings relevant to that issue have been made. Finally, there is the question concerning which petitioner sought a hearing in the alternative but which the ALJ did not reach—of whether Paschall's readmission can be achieved without endangering the health and safety of himself or other residents. Resolution of these matters in petitioner's favor would be a prelude to any readmission in this case.

Accordingly, we vacate the order denying clarification and reconsideration of the ALJ's November 7 order and remand the case to DOH for further proceedings not inconsistent with this opinion.

*So ordered.*