*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-AA-590

EBONY COE, PETITIONER,

V.

DISTRICT OF COLUMBIA DEPARTMENT OF HUMAN SERVICES, RESPONDENT.

On Petition for Review of an Order of the
District of Columbia Office of Administrative Hearings
(DHS-859-16)

(Argued May 16, 2019                    Decided September 1, 2022)

*Chelsea Sharon*, Legal Aid Society for the District of Columbia, with whom *David Carpman*, *Jonathan H. Levy*, and *Jennifer Mezey*, Legal Aid Society for the District of Columbia, were on the brief, for petitioner.

*Richard S. Love*, Senior Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General at the time the brief was filed, and *Caroline S. Van Zile*, Deputy Solicitor General, were on the brief, for respondent.

Before BECKWITH, *Associate Judge*, and RUIZ and FISHER,[*] *Senior Judges*.

Opinion of the court by *Associate Judge* BECKWITH.

Dissenting opinion by *Senior Judge* FISHER at page 12.

---

[*] Judge Fisher was an Associate Judge at the time of argument. His status changed to Senior Judge on August 23, 2020.

BECKWITH, *Associate Judge*: In early December 2016, the District of Columbia Department of Human Services (DHS) notified petitioner Ebony Coe that her Medicaid benefits would be terminated at the end of the month. Ms. Coe appealed the agency's determination to the Office of Administrative Hearings (OAH). She argued that DHS erred in terminating her benefits and that the error was part of an unlawful policy of terminating Medicaid coverage without conducting the pretermination assessment required by federal law. An Administrative Law Judge (ALJ) found that DHS erroneously terminated Ms. Coe's benefits due to a misapplication of federal law, but ruled that he lacked authority to order the mayor to correct the unlawful policy. He determined that such an order could be issued only by a judge of the Superior Court upon a request for equitable relief made in that court. DHS argues that this is a proper interpretation of the relevant statutes and Ms. Coe contends that it is not. We agree with Ms. Coe and we reverse and remand for further proceedings.

## I.

States that participate in Medicaid must comply with federal requirements in administering the program. *See Naccache v. Taylor*, 199 A.3d 181, 187 (D.C.

2018).[1] Medicaid provides health care benefits to, among others, people who are "aged, blind, or disabled," as well as people whose Modified Adjusted Gross Income (MAGI) falls below a certain level. *See* 42 U.S.C. § 1396-1. Some people qualify for Medicaid under more than one provision. The District must reevaluate the eligibility of individuals who are enrolled in Medicaid due to disability at least every twelve months. *See* 42 C.F.R. § 435.916(b). Before terminating an enrolled person from Medicaid, the Department of Human Services (DHS) "must consider all bases of eligibility." *Id.* § 435.916(f)(1). Until DHS has found an enrolled individual to be ineligible, it must "[c]ontinue to furnish Medicaid regularly" to that person. 42 C.F.R. § 435.930(b).

Ms. Coe was receiving Medicaid coverage due to her disability when she received a notice that she would "not be eligible for medical assistance of any type" as of January 2017 because she was "neither aged or disabled." The notice also stated, "[Y]ou can apply for Medicaid at DC Health Link." Believing that she might qualify for Medicaid based on her MAGI, Ms. Coe began the online DC Health Link application. She was stopped by an error message that said she could not apply because she had active Medicaid coverage. A DHS caseworker

[1] The term "state" includes the District of Columbia. *See* 42 C.F.R. § 400.203 (2021).

confirmed that she could not apply until her current benefits expired, and a DHS supervisor suggested that she apply once her disability-based coverage ended.

Ms. Coe filed a request for a hearing with OAH, seeking reversal of the agency's termination decision on the ground that DHS had failed to screen her for MAGI eligibility as it was legally required to do. She also requested an order pursuant to D.C. Code § 4-210.16 directing DHS to correct its policy of terminating non-MAGI Medicaid coverage without conducting the necessary pretermination review of MAGI eligibility. DHS conceded that it failed to evaluate alternate bases for Ms. Coe's Medicaid eligibility because of a "technological barrier"—namely, a "built-in failsafe to prevent fraud and duplicate case creation." DHS asserted that it would address cases "on an ad-hoc basis as they are brought to the Agency's attention" while it modified the certification process. DHS also stated that it would help Ms. Coe obtain a determination of her income-based eligibility and "ensur[e] that she [would] not experience a break in coverage" if she still qualified for Medicaid.

The ALJ reversed DHS's termination of Ms. Coe's benefits because DHS violated Ms. Coe's right under 42 C.F.R. § 435.930(b) to receive benefits until "found to be ineligible." The ALJ also found that the termination was "based on 'a misapplication of law' within the meaning of [s]ection 4-210.16." It declined,

however, to issue an order directing the mayor to take corrective action. Stating that ALJs have "expressly-defined statutory and regulatory powers" that are distinct from the "broad, equitable powers of a court," the ALJ concluded that an order directing the mayor to correct the unlawful policy would constitute "purely declaratory relief that may overstep the boundaries of [his] authority as an administrative law judge."

## II.

On petition for review, Ms. Coe argues that D.C. Code § 4-210.16(b) gives ALJs authority to issue an order directing the mayor to correct a policy that does not comply with federal law. DHS counters that § 4-210.16(b) does not confer such authority and that in the absence of explicit statutory authorization, ALJs are limited to sustaining or reversing a mayoral action.[2]

"The proper construction of a statute raises a question of law, and our review is de novo." *Washington v. District of Columbia Dep't of Pub. Works*, 954 A.2d 945, 948 (D.C. 2008). "Because the OAH is simply an all-purpose adjudicatory body, without a particular subject-matter focus, its legal interpretations do not command deference." *United Dominion Mgmt. Co. v. District of Columbia Rental*

---

[2] DHS did not appeal the ALJ's decision reversing the notice of termination.

*Hous. Comm'n*, 101 A.3d 426, 430 (D.C. 2014) (citing *Williams v. District of Columbia Dep't of Pub. Works*, 65 A.3d 100, 104 (D.C. 2013)).

The OAH Establishment Act gives ALJs the power to issue "interlocutory orders and orders." D.C. Code § 2-1831.09(b)(5). (An order is defined as "the whole or any part of the final disposition (whether affirmative, negative, injunctive, or declaratory in form) of the Mayor or of any agency in any matter other than rulemaking, but including licensing."[3] *See id.* § 2-1831.01(12) (stating that for purposes of the act establishing OAH, "order" has the "meaning provided that term in § 2-502(11)"). D.C. Code § 2-1831.09(e) provides that an ALJ, "or a party in interest in an adjudicated case, may apply to" a Superior Court judge "for an order issued on an expedited basis to show cause why a person should not be held in civil contempt for refusal to comply with an order or an interlocutory order issued by an Administrative Law Judge." Further, a "party in interest may also bring an action for any other equitable or legal remedy authorized by law to compel compliance with the requirements of an order or interlocutory order of an Administrative Law Judge." *Id.* The government argues that this language signifies that the Superior Court is the only proper forum for requesting and

[3] The OAH Establishment Act incorporates this definition from a statute that also discusses the authority of the D.C. Council and other bodies. In this context, the phrase "of the Mayor or of any agency" is a vestige of the original statute and has no independent meaning in this context.

receiving equitable relief relevant to an OAH order. That the Superior Court is empowered to provide relief, however, does not mean an ALJ is barred from doing so, as long as the ALJ's actions are authorized by statute. *See Paschall v. District of Columbia Dep't of Health*, 871 A.2d 463, 467, 469 n.6 (D.C. 2005).

The Public Assistance Act allows any aggrieved applicant for or recipient of public assistance to request a hearing, which will "be conducted in accordance with the provisions of this subchapter." D.C. Code § 4-210.01. One such provision instructs that "the Mayor will correct" a challenged policy when (1) the petitioner "challenges a departmental policy"; (2) the petitioner's claim for relief is granted; and (3) the relief is based on "a misapplication of law contained in the policy." *Id.* § 4-210.16(b).

It is undisputed that the ALJ who heard Ms. Coe's case found that all three requirements were met: (1) Ms. Coe challenged the departmental policy[4] of terminating Medicaid benefits without conducting the pretermination review

---

[4] DHS argued before the ALJ that a "technological barrier," not DHS policy, was responsible for the misapplication of law that jeopardized Ms. Coe's benefits. DHS concedes, however, that the ALJ "found that the misapplication of law was contained in a District 'policy.'" The ALJ found a policy because DHS was aware of the problem but rather than "declining to issue the Medicaid termination notice—and continuing to provide benefits—until it was able to perform the legally required eligibility determination," it instead "chose to issue a notice of termination in violation of federal law."

required by 42 C.F.R. § 435.930(b); (2) the ALJ granted Ms. Coe's request for relief by reversing her termination from Medicaid; and (3) the ALJ granted such relief because DHS had terminated Ms. Coe's benefits "based on a misapplication of the law." The question, then, is whether the statutory scheme authorizes an ALJ to order the Mayor to "correct" the proscribed policy. D.C. Code § 44-1003.09.

DHS argues that the ALJ here was limited to either "sustaining or reversing the challenged mayoral action aggrieving Ms. Coe—the proposed termination of benefits." It posits this as the logical extension of the principle that "administrative law tribunals . . . do not have the inherent 'equitable authority'" of courts in the judicial branch. *District of Columbia Off. of Tax & Revenue v. Shuman*, 82 A.3d 58, 70 (D.C. 2013) (quoting *Ramos v. District of Columbia Dep't of Consumer & Regul. Affs.*, 601 A.2d 1069, 1073 (D.C. 1992)). In *Shuman*, an OAH ALJ considered a "glitch" in a District computer system that caused a series of erroneous tax bills and notices to be sent to a household. *Id.* at 61. The ALJ prohibited the tax agency from sending further incorrect notices or bills to the couple, imposed "conditional monthly fines potentially adding up to many tens of thousands of dollars," and ordered "the unconditional transfer of a large amount of money from one District agency" to another. *Id.* at 61–62. This court reversed the ALJ's decision, finding that the "totally unprecedented" order by the ALJ was

based on a subjective "sense of justice" rather than "the provisions of the statute in question." *Id.* at 69–70.

But *Shuman* does not bar ALJs from imposing declaratory or injunctive relief in all circumstances. It simply reinforces that ALJs must operate within the bounds prescribed by statute.[5]

In *Paschall*, a petitioner was seeking readmission to a nursing facility under D.C. Code § 44–1003.09(c), which provides that "[i]f as a result of a hearing held under this section a resident is to be returned to a facility, the Mayor shall facilitate that return . . . ." *See* 871 A.2d at 468. The ALJ determined that he could not order the patient's readmission to the facility before a hearing and that "such an order could be issued only by a judge of the Superior Court upon request for equitable relief made in that court." *Id.* at 464. Although the court ultimately

---

[5] To the extent DHS argues that only § 4-210.16(a), not § 4-210.16(b), could authorize "broad" and "systemic" relief, that argument is without merit. Subsection (a) allows multiple similarly situated individuals to seek resolution as a class while subsection (b) instructs that misapplications of the law will be corrected. There is no indication that a claimant must pursue class-action status under subsection (a) in order to obtain relief under subsection (b), and "[e]ach provision of the statute should be given effect, so as not to read any language out of a statute 'whenever a reasonable interpretation is available that can give meaning to each word in the statute.'" *Bd. of Dirs. of the Wash. City Orphan Asylum v. Board. of Trs. of the Wash. City Orphan Asylum*, 798 A.2d 1068, 1080 (D.C. 2002) (quoting *Sch. St. Assocs. Ltd. P'ship v. District of Columbia*, 764 A.2d 798, 807 (D.C. 2001) (en banc)).

rested its decision on a federal regulation, *see id.* at 469 (citing 42 C.F.R. §§ 431.205, -246), it also considered the proper interpretation of D.C. Code § 44–1003.09(c). Ultimately concluding that § 44–1003.09(c) empowered "the ALJ [to] order readmission after a hearing," we also noted that the petitioner made "a strong case" that § 44-1003.09(c) implicitly authorized the ALJ to order readmission even before the hearing. *Id.*

The language "the Mayor will" in D.C. Code § 4-210.16 authorizes an ALJ to order the mayor to correct an unlawful policy.[6] *See Paschall*, 871 A.2d at 468–69 (drawing a similar conclusion based on language in D.C. Code § 44–1003.09(c) that "the Mayor shall facilitate" the return of a successful hearing applicant). The government argues, and Ms. Coe agrees, that the ALJ does not have authority to *enforce* an order for equitable relief. That does not, however, prevent the ALJ from issuing an order that may then be enforced by the Superior Court. *See* D.C. Code §§ 2-1831.01(12), 2-502(11), 2-1821.09(e).

We need not decide whether such an order would be appropriate in this case. "To hold, as we do, that the ALJ possesses such authority is not to say that he must

---

[6] DHS contends that the language "the Mayor will correct that challenged policy" leaves no room for an injunction and it must be the Mayor herself who takes action. We are not persuaded by this reading, which presumably would prevent a Superior Court judge, and not just an OAH ALJ, from issuing an injunction.

exercise it or that to do so will be appropriate in all cases, including this one." *Paschall*, 871 A.2d at 469. DHS contends in its brief that "after identifying the issue that caused the premature proposed termination of Ms. Coe's benefits, the Mayor put a process in place to correct the mistake." DHS made similar representations to the ALJ but, as DHS acknowledges, the ALJ did not address them. Ms. Coe, for her part, provided evidence that other people had experienced unlawful termination of benefits, suggesting that her termination was the result of "standard practice," rather than "isolated employee error." Ms. Coe made similar representations to this court, which DHS contested. On remand, the ALJ should consider whether DHS's unlawful policy still exists and whether an order directing the mayor to correct the policy is warranted in this case. *See id.* (remanding for factfinding by ALJ and determination whether requested order was still necessary); *Badawi v. Hawk One Sec., Inc.*, 21 A.3d 607, 614 (D.C. 2011) ("Normally, when an agency fails to make a finding on a materially contested issue of fact, we do not 'fill the gap by making [our] own determination from the record, but must remand the case for findings on that issue.'" (alteration in original) (quoting *Morris v. EPA*, 975 A.2d 176, 181 (D.C. 2009))).

## III.

For the foregoing reasons, we reverse the ALJ's ruling that he lacked the authority to order the mayor to correct the unlawful policy and remand for further proceedings not inconsistent with this opinion.

*So ordered.*

FISHER, *Senior Judge*, dissenting: The ALJ granted Ebony Coe all the relief she needed and all that she was entitled to receive. Nevertheless, petitioner's lawyers are determined to use this case as a vehicle to obtain a ruling that may benefit other clients in future cases. I believe that we should "confine ourselves to a resolution of the only question fairly presented to us by this appeal . . . ." *District of Columbia v. Wical Ltd. P'ship*, 630 A.2d 174, 182 (D.C. 1993).

Petitioner sought reversal of the agency's decision to terminate her benefits, arguing that DHS had failed to screen her for MAGI eligibility, as the law required. DHS responded that it indeed should have considered whether Coe was

eligible for Medicaid coverage on alternative bases. The agency attributed the error to a faulty process; its computer system had "a built-in failsafe to prevent fraud and duplicate case creation" which blocked active Medicaid enrollees from receiving an eligibility determination. DHS did not have "a policy, construction, or interpretation containing a misapplication of th[e] law." DHS assured the ALJ that it was "actively working" to change the certification process and, in the meantime, averred that it would address cases "on an ad-hoc basis as they are brought to the Agency's attention." As for Coe, DHS stated that it would "assist her in obtaining" a determination of her income-based eligibility and "ensur[e] that she does not experience a break in coverage" if she still qualified for Medicaid.

Because the notice of termination was "based on a misapplication of law," the ALJ reversed the agency's decision. He concluded: "By noticing the termination of Petitioner's Medicaid benefits without having considered whether she was eligible for benefits based on her MAGI, DHS violated Petitioner's right, under federal law, to continue receiving Medicaid benefits until 'found to be ineligible,'" citing 42 C.F.R. § 435.930(b). However, the ALJ declined to issue "the broad remedial order [Coe] seeks," adding that the reversal of the termination notice "provides Petitioner with adequate relief in this case." He also decided not to grant "declaratory relief beyond that which explains [the] order of reversal."

Here, the parties primarily dispute whether the ALJ had the power to order the mayor to comply with the law through an injunction and, if so, whether he was obliged to issue such an order here. Those are not easy questions. The statute clearly indicates that the mayor "will" correct a challenged policy if a claimant is granted relief because of a misapplication of law — but the text is silent as to whether an ALJ is empowered to order the mayor to do so.

In this case it is unnecessary to decide whether an ALJ has the authority to issue an injunction, either stemming from the specific language of § 4-210.16(b) or based on other statutory or implied authority. "An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). No need for an injunction exists if a "less drastic remedy" is "sufficient to redress" the injury. *Id.* at 165–66. The language of § 4-210.16(b) already instructs the Mayor to "correct the challenged policy, construction or interpretation," and petitioner has not shown why that legislative directive is inadequate or ineffective.

Here, moreover, petitioner already received the relief that she needed: a comprehensive review of her eligibility for Medicaid. The ALJ's order, which

reversed the notice of termination, effectively kept petitioner in her previous enrollment status; petitioner's reply brief confirms that the District has complied with the ALJ's order. Additionally, DHS declared that it would review Coe's eligibility for MAGI-based Medicaid and that Coe would not face a gap in her coverage if she qualifies. Regarding individuals who are similarly situated to Coe, the District represents that it has developed a practice to manually process such applications. As the District's brief promises: "Under the current ABD renewal process, if the beneficiary is no longer eligible under their current category, the agency will evaluate the beneficiary for another Medicaid eligibility category prior to terminating Medicaid coverage."

This makeshift process no doubt is cumbersome and inefficient. Should the District again fail to meet the requirements of the Medicaid program, one potential avenue for seeking broader relief is a consolidated administrative hearing based on the provision that allows "a class action on behalf of . . . others similarly situated," D.C. Code § 4-210.16(a), (a procedure which petitioner did not invoke here. We also note that the Superior Court "can assuredly issue equitable relief in an appropriate case." *D.C. Office of Tax and Revenue v. Shuman*, 82 A.3d 58, 74 (D.C. 2013).

The ALJ properly concluded that DHS had misapplied the law, he reversed the notice of termination that the agency had sent to petitioner prematurely, and the District has devised an interim solution. Because petitioner's injury has been redressed, there is no need in this case to determine whether a more "drastic and extraordinary remedy," such as an injunction, would be available in other circumstances.